## NELSON NEUMAN et al. *v.* THE MAYOR AND CITY COUNCIL OF BALTIMORE

[No. 61, September Term, 1974.]

*Decided September 24, 1974.*

---

14

The cause was argued before THOMPSON, GILBERT and MENCHINE, JJ.

*Louis J. Glick,* with whom were *Burke, Gerber & Wilen* on the brief, for appellants.

*John N. Spector, Assistant City Solicitor,* with whom was *George L. Russell, Jr., City Solicitor for Baltimore City,* on the brief, for appellee.

GILBERT, J., delivered the opinion of the Court.

The general rule is that the action of a zoning board will not be reversed on appeal if there is "substantial evidence" in the record to support the board's finding. *Luxmanor Citizens v. Burkart,* 266 Md. 631, 647, 296 A. 2d 403 (1972). If such evidence does exist in the record, the matter is considered to be "fairly debatable", and the courts may not substitute their judgment for that of the board which is presumed to exercise a degree of expertise in ·zoning. *Agneslane Inc. v. Lucas,* 247 Md. 612, 233 A. 2d 757 (1967); *Board v. Oak Hill Farms,* 232 Md. 274, 192 A. 2d 761 (1963); *Largo Civic Ass'n v. Pr. Geo's Co.,* 21 Md. App. 76, 90, 318 A. 2d 834 (1974). On the other hand, where the action of the board is not supported by substantial evidence the board's decision cannot be said to be "fairly debatable". Under those circumstances the board's finding falls into the category of being arbitrary, capricious and a denial of due process of law. *Dundalk Holding Co. v. Horn,* 266 Md. 280, 283, 292 A. 2d 77, 78-79 (1972).

With that background firmly in mind, we now consider the instant appeal. Nelson Neuman is the owner of property known as 4616 Curtis Avenue in Baltimore City. The land is improved by a two story building. The lot upon which the building has been erected is 87 feet long and 21 feet wide. The building measurements are approximately 60 feet by 21 feet. The first floor of the building has been used since 1968 or 1970 [1] for the repair and maintenance of tractors [2] that are over $1^1/_2$ ton capacity. Prue Scott rents the property from Neuman, and he is the actual operator of the business that is conducted on the premises. Scott testified before the board that he owns the tractors upon which the maintenance is performed at the site, they are five in number, and he rents some of them to others for use in hauling trailers and uses some of them himself.

Prior to the enactment of a comprehensive zoning ordinance on April 20, 1971, now known as Ordinance 1051, the Neuman property was in a second commercial use district. The repair of motor vehicles was permitted under that zoning classification. [3] When the Mayor and City Council of Baltimore adopted Ordinance 1051, after years of study, the instant property was rezoned to a classification known as a B-2-2 zoning district. [4] A motor vehicle repair or maintenance business is not a permitted use in an area that is zoned B-2, and if Neuman is to be allowed to continue the use of the property for motor vehicle repair and maintenance, it may only be on the basis that such use lawfully existed prior to the adoption of Ordinance 1051.

Recognizing that Ordinance 1051 would result in a number of properties being placed in the non-conforming use category, the Mayor and City Council of the City of

---

1. There is a conflict in the testimony as to the exact date.

2. Motor vehicles used to pull trailers.

3. *See* Baltimore City Code, art. 30, § 7 (1966).

4. A B-2 district is a "Community Business District ... designed to accommodate the needs of a larger consumer population than is served by the Neighborhood Business District [B-1]—thus a wider range of uses is permitted for both daily and occasional shopping." Ordinance 1051, § 6.2. A B-2 district is subdivided into four subdistricts for the purpose of bulk regulations.

Baltimore provided in § 8.0-1 of the Ordinance that "[a]ny non-conforming use or structure, or any non-complying structure, may be continued, subject to the regulations of this chapter."

Neuman made application to be allowed to continue the use of his property for tractor maintenance and repair as a non-conforming use. The City zoning enforcement officer denied the application, as he was bound to do under Ordinance 1051, and Neuman appealed to the Board of Municipal and Zoning Appeals. There were two separate hearings before the Board. At the first hearing twelve protestants, including elected public officials, appeared. Several other elected officials communicated their objections, in writing, to the Board. Although the protestants were vocal and adamant in their opposition to the use of the Neuman property for tractor maintenance and repair, the testimony of Neuman, Scott and the protestants leads to the inescapable conclusion that the Neuman building had been used for that purpose prior to April 20, 1971, the date of the adoption of Ordinance 1051.

Section 8.0-7c of Ordinance 1051 confers upon the Board the authority to determine, after public notice and hearing, whether a non-conforming use does, in fact, exist. In the case now before us, the Board, by a vote of two pro and three contra,[5] adopted a resolution in which the Board found that the proposed "use is in violation of the provisions of the Zoning Ordinance." The Board denied the Neuman application. Neuman appealed to the Baltimore City Court where the judge remanded the case to the Board for the purpose of having the Board make a specific finding as to the existence *vel non* of a non-conforming use, and whether " . . . there can be a lawful non-conforming use without a permit for said use being issued." At the re-hearing, the testimony was limited to the quoted proposition put to the Board by the hearing judge. The Board then held that "it is

---

5. Md. Ann. Code art. 66B, § 2.08 (h) requires, in Baltimore City, the "concurring vote of four members of the board . . . to reverse any order, requirement, decision, or determination of any such administrative official, or to decide in favor of the applicant on any matter upon which it is required to pass. . . ."

possible that a lawful, non-conforming use can exist without a permit," but the Board decided, by a vote of two pro and two contra [6] that "from the facts adduced at the public hearing a non-conforming use did "not, in fact, exist." Neuman again appealed to the Baltimore City Court where the judge, after argument, said:

> ". . . [L]ooking at the record, I cannot say that the record is wanting or is not legally sufficient to sustain [the Board's] finding.
>
> It is not for me to substitute my judgment for the Board if, indeed, there is sufficient evidence before the Board to undergird its position.
>
> I find as a fact that there is sufficient evidence, and therefore, the decision of the Zoning Board will be affirmed."

We have carefully reviewed the transcripts of the testimony presented to the Board at the hearing and the re-hearing. Our perusal of those transcripts fails to disclose even a scintilla of evidence to support the Board's finding that a non-conforming use did not exist. The protestants objected to the traffic, noise and pollution that the business generated in their neighborhood, but they did not contradict Neuman's evidence of the existence of a non-conforming use.

It is crystal clear that the Board acted not only without "substantial evidence", but without any evidence, to support its findings, and its decision should have been reversed by the hearing judge. Zoning should never be allowed or disallowed on the basis of a plebiscite of the neighborhood. *Mont. Co. Council v. Scrimgeour*, 211 Md. 306, 127 A. 2d 528 (1956); *Mayor and Council v. Cotler*, 230 Md. 335, 187 A. 2d 94 (1963). That, however, is what seems to have happened in this case. The action taken by the Board was arbitrary, capricious and denied Neuman due process of law.

In its brief and on oral argument the City asserts that because Neuman did not obtain a certificate of occupancy

---

6. One member of the Board was absent.

for the use of the building for motor vehicle repair and maintenance that the use is "unlawful", Baltimore City Code, art. 30, § 46 (1966), and no valid non-conforming use may be predicated upon an unlawful use. The City states that even if a non-conforming use is held to have existed prior to the adoption of Ordinance 1051, Neuman is not entitled to continue such use because, from its inception, it is invalid for lack of a permit. This interesting question, while posed to the Board by the hearing judge, and answered by that body, was, nevertheless, not disclosed by the record to have been presented to the court and decided by it. It is not properly before us, and we decline to consider it. Md. Rule 1085. *See Ramsey v. Prince George's Co.,* 18 Md. App. 385, 308 A. 2d 217 (1973); *Little v. Duncan,* 14 Md. App. 8, 284 A. 2d 641 (1971).

> *Judgment reversed and case remanded for the entry of a judgment in conformity with this opinion.*
>
> *Costs to be paid by the Mayor and City Council of Baltimore.*