CHESAPEAKE RANCH CLUB, INC. *v.* FRANCES W. FULCHER ET AL.

[No. 719, September Term, 1980.]

*Decided March 10, 1981.*

The cause was argued before LISS, MacDANIEL and WEANT, JJ.

*Glenn B. Harten* for appellant.

*Steven L. Clagett* for appellee Board of County Commissioners for Calvert County.

LISS, J., delivered the opinion of the Court.

Chesapeake Ranch Club, appellant, submitted to the Zoning Board of Calvert County an application for the reclassification of an 8.034 acre parcel of land. The parcel is a peninsula located on the southern tip of Calvert County and fronts on both the Chesapeake Bay and the Patuxent River. The nearest major highway is approximately one mile away. When the original zoning ordinance was adopted in 1967, the subject property was zoned C-2, Highway Commercial. This classification was granted at the request of the owner of the parcel at that time. Appellant, the current owner, sought to have the parcel reclassified as C-3, Marine Commercial, on the grounds that the original C-2 classification was a mistake and that a C-3 classification was more appropriate to the land. This change would permit appellant to construct a marina on the property which is otherwise prohibited under a C-2 classification.

The property here involved is located in a largely residential community known as Drum Point which was developed in the early 1960's by Paul Kerman, of the Drum Point Corporation. The property was formerly used as the "Surf and Sand Club," and was open to the general public.

It included a snack bar and swimming facilities. The Surf and Sand Club was closed in August of 1969 and has fallen into disrepair since that time.

The record discloses that although the original developer had requested and obtained C-3 zoning classifications for other parcels he owned in 1967 (when the original zoning ordinance was adopted), he nevertheless elected to have the subject parcel classified as C-2. In August of 1969, Drum Point Corporation conveyed several pieces of property to appellant herein by deed recorded among the land records of Calvert County. In reference to the subject property, the deed states that the parcel includes "the beach club building zoned C-2 (for motels)."

When the application for rezoning was filed, the Planning Commission of Calvert County undertook a review of the request by soliciting comments from related governmental agencies and the general public. The Commission further requested the applicants to submit a proposal for their intended use of the property should the rezoning be granted. The Department of Planning submitted its report to the Calvert County Planning Commission, which recommended that the petition for rezoning be denied.

Public hearings were held before the Board of County Commissioners, sitting as a zoning board, in August and September of 1979. At the hearing appellant relied solely on the contention that there was a mistake in the original zoning classification. Appellant never argued that there was a substantial change in the character of the neighborhood which would warrant a rezoning.

The applicant presented four witnesses at the hearing who testified to the following: (1) Ralph Smalley, contract purchaser of the property, testified that the marina would consist of six piers or docks, which would be protected by a floating breakwater; (2) Steven Peterson, a traffic planning and engineering consultant, testified that if the property is utilized in its present C-2 Highway Commercial status, more traffic would be generated than would result from the applicant's plan for a marina; (3) Owen Jones, a real estate appraiser and consultant, testified that the optimal use of

the property would be obtained under a C-3, Marine Commercial classification; and (4) Bruce Philipson, president of Chesapeake Ranch Club, Inc., testified that the construction of a marina would be compatible with the water oriented character of the neighborhood and would increase the tax base of the County. The applicant also adduced evidence from the original developer that he was unaware of the distinction between C-2, Highway Commercial, and C-3, Marine Commercial when he originally applied for zoning.

In opposition to the rezoning, the Board of County Commissioners heard testimony from several governmental agencies. The Maryland Natural Resources Police stated that "a marina of this type ... would be hazardous to navigation and would not benefit this location." The Calvert County Health Department expressed its concern as to the potential source of pollution and danger to area shellfish from the proposed use of the property. This concern was corroborated by the Environmental Health Administration. Others who testified in opposition to the rezoning included the president of the Drum Point Property Owner's and Citizen's Association and several private citizens — many of whom had specific expertise because of prior experience with technical deficiencies of the planned marina. These citizens expressed strenuous objection to the traffic hazards which they contended would be created by the marina. They questioned the need for such a facility and contended it would be a hazard to navigation. They also raised the issues as to the potential for shoreline erosion, the detrimental impact on water quality and shellfish production, and the general incompatibility with the existing and proposed development of the area.

After reviewing the evidence, the Board of County Commissioners upheld the Planning Commission's recommendation and passed resolution No. 26-79 which denied the rezoning application. Their decision was subsequently affirmed by the Circuit Court for Calvert County by opinion and order dated June 30, 1980. From that judgment, Chesapeake Ranch Club, Inc. appeals. Three issues are raised for this Court to determine:

1. Whether the zoning board erred in finding that there had not been a mistake in the original zoning classification of the subject property?
2. Whether the zoning board erred in not reclassifying the subject property from Highway Commercial to Marine Commercial?
3. Whether the zoning board made an improper finding of fact in its decision to deny appellant's request for reclassification?

## 1. and 2.

The Court of Appeals has held on numerous occasions that zoning and rezoning classifications are legislative functions. The role of the courts in zoning matters consists of a review of the zoning authority's decision-making process to ensure that it has not acted arbitrarily, capriciously or unreasonably. Absent any of these irregularities, the courts will leave untouched the quasi-judicial decision of the zoning authority. This case imposes a particularly heavy burden upon appellant because it involves an attempt to amend an original zoning map. Appellant must therefore overcome the strong presumption of correctness which attaches to such original zoning. *Valenzia v. Zoning Board,* 270 Md. 478, 312 A.2d 277 (1973).

Appellant concedes that the law governing this case is found in *Luxmanor Citizen's Assoc., Inc. v. Burkart,* 266 Md. 631, 296 A.2d 403 (1972), where the Court of Appeals held:

The law is well settled in Maryland that upon appeal from the action of a zoning board, if that action is supported by any substantial evidence, then the matter before it was "fairly debatable" and the lower court should not substitute its judgment for that of the administrative body. On the other hand, if the action of the board was not supported by any substantial evidence, then such action was arbitrary and capricious and results in a denial of due process of law prohibited by Art. 23 of the

Declaration of Rights in the Constitution of Maryland and should be reversed for this reason. [266 Md. at 647.]

Appellant introduced into evidence a letter written by the original developer which purports to indicate that he did not know the difference between C-2, Highway Commercial, and C-3, Marine Commercial, when the subject parcel was originally zoned. However, the Board of County Commissioners had before them substantial evidence which, if believed, raised the question as to whether the zoning was in fact originally mistaken. It is clear that the original developer requested a C-2 classification for the subject parcel and at the same time requested C-3 classifications for other properties which he owned. It is further evident that the original developer knew of the existence of the C-2 classification and its effects since the deed in which he conveyed the subject property described the property as "the beach club zoned C-2 (for motels)." We feel that the existence of this evidence rendered the matter before the board "fairly debatable" and the decision of the administrative body should therefore be left untouched.

Assuming, *arguendo,* that there was a mistake in the original zoning classification, the mistake was not of sufficient character to warrant the rezoning requested by appellant. In order for a mistake to be a legally justifiable basis for rezoning, there must have been a *basic and actual mistake by the legislative body* at the time the property was originally zoned. *Pattey v. Board of County Commissioners of Worcester County,* 271 Md. 352, 317 A.2d 142 (1974). It is clear from the record that had there been a mistake, the mistake was on the part of the original developer in requesting the C-2 classification; not by the legislative body in granting the request. Moreover, the existence of a mistake by the zoning authority at the time of the original zoning merely *permits* the legislative body to grant the reclassification but does not require it to do so. *Hardesty v. Dunphy,* 259 Md. 718, 271 A.2d 152 (1970). It is clear from the record that the Board of County Commissioners exercised its option not to grant the reclassi-

fication when it stated in its resolution, "there is no mistake in the existing zoning that would warrant a change to Commercial C-3."

In light of the evidence before the zoning board, we conclude that the matter before the board was "fairly debatable" and that there was ample evidence to support its conclusion.

3.

Finally, appellant argues that the resolution of the County Commissioners did not comply with Article 23.02 of the Calvert County Zoning Ordinance in that there were insufficient findings of fact. Article 23.02 states:

*Procedure for Adopting Changes.*

Zoning regulations, restrictions and district boundaries may from time to time be amended, supplanted, modified or repealed. Where the purpose and effect of the proposed amendment is to change the zoning classification, the County Commissioners shall make finding of fact in each specific case including, but not limited to, the following matters: Population change, availability of public facilities, present and future transportation patterns, compatibility with existing and proposed development for the area, the recommendation of the Planning Commission, and relationship of such proposed amendment to the County Comprehensive Plan; and may grant the amendment based upon a finding that there was a substantial change in the character of the neighborhood where the property is located or that there was a mistake in the existing zoning classification. A complete record of the hearing and the votes of all members of the County Commissioners shall be kept.

Had the County Commissioners acceded to appellant's request to amend, supplant, modify, repeal, or reclassify the existing zoning on the subject parcel, perhaps more detailed findings of fact would have been necessary. However, the County Commissioners denied the reclassification on the basis of issues which were fairly debatable and therefore did not require the specific factual findings (as to population change, availability of public facilities, etc.) as mandated by the zoning ordinance.

In support of its position, appellant cites three decisions handed down by the Maryland Courts.[1] We find the cases to be inapposite to the issues here involved. It should be noted that each of these cases involved situations in which reclassifications were granted rather than rejected. Furthermore, the basis for reclassification in these cases involved alleged changes in the character of the neighborhood as opposed to a mistake in the original zoning. It is obvious from our reading of the record that the Board did not consider the findings of fact as to population change, transportation patterns, etc. applicable to this case. The burden of proof falls on the person seeking the zoning reclassification. *See Messenger v. Board of County Commissioners for Prince George's County,* 259 Md. 693, 271 A.2d 166 (1970). We conclude that the Board of County Commissioners of Calvert County, sitting as a zoning board, made adequate findings of fact to support the fairly debatable issue before it in this case.

*Judgment affirmed, costs to be paid by appellant.*

---

1. Chevy Chase Village v. Montgomery County Council, 258 Md. 27, 264 A.2d 861 (1970); Montgomery v. Board of County Commissioners for Prince George's County, 256 Md. 597, 261 A.2d 447 (1970); Sedney v. Lloyd, 44 Md. App. 633, 410 A.2d 616 (1980).