638 A.2d 1175

John C. NORTH, II, et al.

v.

ST. MARY'S COUNTY et al.

No. 982, Sept. Term, 1993.

Court of Special Appeals of Maryland.

March 2, 1994.

Reconsideration Denied April 26, 1994.

George E.H. Gay, Asst. Atty. Gen., argued (J. Joseph Curran, Jr., Atty. Gen. and Thomas A. Deming, Asst. Atty. Gen., on the brief), Annapolis, for appellants.

Joseph R. Densford, Leonardtown, argued for appellee, St. Mary's County.

John T. Enoch, argued (John Amato, IV and Goodman, Meagher & Enoch, on the brief), Baltimore, for appellee, John T. Enoch.

Argued before BLOOM, CATHELL and HARRELL, JJ.

CATHELL, Judge.

Appellant, John C. North, II, Chairman of the Chesapeake Bay Critical Area Commission (Chairman), appeals from a decision of the Circuit Court for St. Mary's County affirming a decision of the St. Mary's County Board of Appeals, granting a variance from the provisions of the St. Mary's County Critical Area Program which prohibits the use requested, except as a variance, in the critical area buffer zone. Mr.

John T. Enoch and the Board of County Commissioners of St. Mary's County are the appellees.

Appellant poses two questions:

1. Was there substantial evidence before the Board to support its decision to grant the variance?

2. Is the Board's decision supported by lawfully sufficient findings of fact and conclusions of law?

In addressing this case, it is important to recognize what it is and what it is not. Though appellant extensively refers to the public policy behind Maryland's Chesapeake Bay Critical Area legislation, this *is not* a case involving any interpretation or review of that legislation. The time for review and challenges to that legislation were: (1) when it was adopted, (2) subsequently when St. Mary's County adopted its program pursuant to the requirements of the state legislation, or (3) by a direct constitutional challenge to the state and county legislation when the case was heard below. No such challenge was made below in the case at bar. This case *is,* thus, a simple zoning variance case.

### Facts

Mr. Enoch, appellee, owns a 4.3 acre parcel of land adjacent to Cuckold Creek in St. Mary's County. The parcel is within the County's critical area, *i.e.,* within 1,000 feet beyond the landward boundaries of wetlands and the heads of tides. It is partially within the County's critical area buffer.

Part of the parcel is already developed with a ranch home and outbuildings. The structure at issue here is a proposed gazebo to be built within twenty-five feet [1] from the mean high water mark of the creek. Mr. Enoch's purpose in building the gazebo, it is alleged, is to have a place to contemplate, read and enjoy the view.

---

1. The record at one point refers to its location as being thirty-five feet from the creek. The original application called for the gazebo to be built within fifteen feet of the creek.

The existing ranch house backs up to the waters of the creek. Attached to the rear of the house is a network of exterior decking extending twenty to thirty feet out over the steep shore, which extends twenty feet or more to the waters of the creek. The water view from the deck is unobstructed. A walkway leads from the decks down the creek bank to a pier that extends out into the creek.

The gazebo is not a permitted use under the County's program. Mr. Enoch, therefore, applied for a variance from the provisions of the code to enable him to construct the gazebo. The County's Department of Planning and Zoning informed the Board of Appeals that Mr. Enoch did not meet the requirements entitling him to a variance because there were no special circumstances existing which established that Mr. Enoch had an unwarranted hardship.

Mr. Enoch admitted at the hearing before the Board of Appeals that:

> I think that if we're not permitted to use this point for a scenic view, that it would be a deprivation of the rights of the property owner, *maybe not a great deprivation*....
>
>    ....
>
> ... The whole purpose ... is ... to be able to walk out ... and observe that view.... I have a little bench ..., a couple chairs and a table where I sit out there [the point] and read.... [T]his gazebo ... would permit a better access to this. [Emphasis added.]

### Standing

Before addressing the questions raised by appellant, it is necessary to resolve an issue raised by appellee Enoch. He asserts that:

> The Commission has no standing to assert non-environmental features of the St. Mary's County program, such as "unwarranted hardship."

He argues:

> Enoch respectfully asserts that the standing conferred upon the Chairman under § 8–1812 of the Natural Resources

Article must be interpreted as limited to the State's interest in overseeing the resource protection program for the Bay and its tributaries; i.e. the State only has standing on variance approval issues to the extent they are based on adverse impact to water quality, wildlife or natural habitat of the adjacent shoreline. The Commission has no more standing to argue "unwarranted hardship," in the face of an undisputed finding that this gazebo will have no adverse environmental impact, than it would to argue that the variance must be denied because Enoch did not pay the County's application fee.

. . . .

In this case the Commission concedes that if the Planting Agreement is implemented at the time of the gazebo construction, the granting of the variance will not adversely affect water quality or adversely impact fish, wildlife, or plant habitat. . . . Wholly apart from environmental concerns, the State now sees itself as the dictator of what is a luxury and what is a hardship with respect to the use of Enoch's property. Gazebos, says the Commission, are luxuries that the State can deny property owners even in the absence of adverse environmental consequences. Enoch disagrees. The Court should dismiss the appeal as it contains no justifiable issue that the Commission, or its Chairman, can lawfully assert.

We found it unnecessary to address a similar issue in *The Wharf at Handy's Point, Inc. v. Department of Natural Resources*, 92 Md.App. 659, 610 A.2d 314 (1992), where we based our decision on a failure to exhaust administrative remedies. It is now necessary for this issue of standing to be resolved.

As we perceive the pertinent statutory provisions, the only limit on the Chairman's right, or standing, to appeal the issuance of variances is that provision found in Md.Nat.Res. Code Ann. § 8–1812(a) (1990 Repl.Vol.) where it provides that the Chairman must withdraw [the appeal] "if, within 35 days . . . at least 13 members [of the Commission] indicate disap-

proval...." There is no evidence that the Chairman's authority was so withdrawn.

The statutes addressing his right to appeal state:

> After the Commission has approved ... a program, the chairman ... has standing and the right and authority to ... appeal ... concerning a project approval in the Chesapeake Bay Critical Area.

*Id.*

> The chairman may appeal an action or decision even if the chairman was not a party to or *is not specifically aggrieved by the action or decision.*

*Id.* at section 8–1812(c) (emphasis added).

Additionally, COMAR 27.01.11C, the State regulations authorizing local programs to contain variance provisions, states:

> Appeals ... shall be taken in accordance with all applicable laws and procedures of each local jurisdiction for variances.... [T]he Chairman may appeal an action or decision even if the Chairman was not a party to *or is not specifically aggrieved by the action or decision.* [Emphasis added].

It is clear to us that the Chairman's (thus, the Commission's) right to appeal a decision of the Board is unrestricted. We, therefore, reject Enoch's claim that the Commission has no standing to assert non-environmental features of the St. Mary's County's ordinance enacted pursuant to the dictates of the Natural Resources Article.

We are concerned that the Commission initially offered no evidence, nor did anyone, of any environmental damage that might occur if this gazebo were to be built.[2] As we perceive the general thrust of the state and local legislation, the Commission was included as an unlimited litigant in order to permit it to fully guard the environmental interests it was

---

**2.** Had the applicant not asked for a continuance of the first hearing before the Board, there would have been nothing in the record from the Commission. The letter from the Commission was received between the first and second hearing. It did contain environmental objections.

created to protect. The local ordinance, and the state legislation, authorize the Chairman to be a full litigant. We are thus constrained to permit the Chairman to litigate all issues. As we noted in *Green v. Bair,* 77 Md.App. 144, 152, 549 A.2d 762 (1988), *cert. denied,* 315 Md. 307, 554 A.2d 393 (1989), quoting the trial court:

> It is not for the court to decide the wisdom, *vel non,* of the zoning code, as adopted by the Mayor and common council [of St. Mary's County], but rather to enforce it as it is written.

### 1.

### Was there substantial evidence before the Board to support its decision to grant a variance?

### The Law

We said in *Enviro–Gro Technologies v. Bockelmann,* 88 Md.App. 323, 335, 594 A.2d 1190, *cert. denied,* 325 Md. 94, 599 A.2d 447 (1991):

> We, in discussing the law relative to rezoning, have stated that the courts may not substitute their judgment for that of the legislative agency, *if the issue is rendered fairly debatable.* The basic reason for the "fairly debatable" rule is that zoning matters are, first of all, legislative functions and, absent arbitrary and capricious actions, are presumptively correct if based upon substantial evidence; even if substantial evidence to the contrary exists. [Emphasis added, citations omitted.]

*See also Luxmanor Citizen's Assoc., Inc. v. Burkart,* 266 Md. 631, 647, 296 A.2d 403 (1972); *Chesapeake Ranch Club, Inc. v. Fulcher,* 48 Md.App. 223, 227–28, 426 A.2d 428 (1981). We also stated in *Neuman v. Mayor & City Council,* 23 Md.App. 13, 14, 325 A.2d 146 (1974), that "where the action of the Board is not supported by substantial evidence the board's decision cannot be said to be 'fairly debatable.' Under those circumstances the board's finding falls into the category of being arbitrary, capricious and a denial of due process of law." *See also Red Roof Inns, Inc. v. People's Counsel,* 96 Md.App.

219, 224, 624 A.2d 1281 (1993); *County Comm'rs v. Zent,* 86 Md.App. 745, 752–53, 587 A.2d 1205 (1991).

### Discussion

We first point out that in zoning law a variance, if granted (unlike a special exception),[3] permits a use which is prohibited and presumed to be in conflict with the ordinance. An applicant for a variance bears the burden of overcoming the presumption that the proposed use is unsuitable. That is done, if at all, by satisfying fully the dictates of the statute authorizing the variance.

*Anderson v. Board of Appeals, Town of Chesapeake Beach,* 22 Md.App. 28, 322 A.2d 220 (1974), also involved a set back restriction, *i.e.,* the distance between buildings. In *Anderson,* there was testimony that the property in question was unique because it was L-shaped, with the southern portion being considerably narrower than the north portion. It was contended that "there is no other way for us to locate that building." *Id.* at 33, 322 A.2d 220. The applicant noted that

---

3. Baltimore City's zoning code makes no distinction between special exceptions and variances. Its code treats what it calls special exceptions as if they were variances. We know of no other zoning code that fails to make the distinction between special exceptions and variances. The large number of cases arising out of Baltimore City have led to numerous cases where the distinction between the two entities has become somewhat muddled in the case law. This, we would suggest, results not from appellate rejection of the distinction but from the unique provisions of the Baltimore City statute. For this reason, it is generally inexact to rely on Baltimore City cases when a special exception is at issue in another jurisdiction, but would be appropriate when a variance is at issue.

As the Court of Appeals noted in *Dampman v. Mayor and City Council,* 231 Md. 280, 285, 189 A.2d 631 (1963):

Ordinarily there is a distinction between a variance and an exception.... An exception is usually granted where a specific use is permitted by the legislative body in a given area if the zoning plan is conformed to and there is no adverse effect on the neighborhood. There is usually no necessity for showing undue hardship. On the other hand, variances are usually given only on the showing of undue hardship. In Baltimore City there appears to be no distinction between the two terms.... [Citations omitted.]

*See also Montgomery County v. Merlands Club, Inc.,* 202 Md. 279, 288–89, 96 A.2d 261 (1953).

unless the variance was granted "our people wouldn't even have any view of the water." *Id.* We noted that the location of the building for which the variance was sought "was chosen to maximize the residents' view of the water. . . ." *Id.*

Experts testifying for the applicant noted that the property had " 'intriguing natural beauty' with distinct contours and vegetation which should not be disturbed. . . . [T]he buildings are located . . . to enhance the view from the bay toward the project." *Id.* at 34, 322 A.2d 220. The circuit court, in affirming the grant of the variances, noted that the Board had taken the position that special topographic features existed, that existing buildings on the property and the property's relation to the Chesapeake Bay entitled the applicants to consideration.

■ We discussed Chesapeake Beach's variance provisions noting that, unlike pure *area* (as opposed to use) variances, which are permitted if strict compliance with the regulations would result in practical difficulties *or* unreasonable hardship,[4] Chesapeake Beach's ordinance provided that area variances could only be granted if strict application of the regulations "would result in practical difficulty *and* unnecessary hardship depriving the owner of the reasonable use of land. . . ." *Id.* at 40, 322 A.2d 220. We then opined:

> Not only does it [the variance provision] express the criteria of practical difficulty and unnecessary hardship in the conjunctive, but it also independently requires that no area variance be granted unless it is shown that strict application of the regulations will deprive the applicant of the reasonable use of his land and that the grant of the variance is necessary for the reasonable use of the land. It defines the hardship which must be shown as the equivalent of a

---

**4.** A similar provision exists in the Baltimore County Ordinance that we construed in *Red Roof Inns, Inc. v. People's Council for Baltimore County,* 96 Md.App. 219, 224, 624 A.2d 1281 (1993), where we noted that when the language states practical difficulties *or* unreasonable hardship "satisfaction of either of the conditions may warrant a variance."

constitutional taking, and utilizes the same criteria employed by the Court of Appeals for establishing undue hardship.... [A]n area variance can be granted only if there is proof that the strict application ... would result in an unnecessary hardship which deprives the owner of the reasonable use of his land.

*Id.* at 41, 322 A.2d 220. *See also Green,* 77 Md.App. at 152, 549 A.2d 762.

■ The St. Mary's County variance provision at issue here, likewise, provides:

[W]hen, owing to special features of the site or circumstances, the literal enforcement ... result[s] in *unwarranted hardship....*

In granting variances the county must:

1. Find that special conditions or circumstances exist that are peculiar to the land ... *and* that a literal enforcement ... would result in *unwarranted hardship;*

2. That a literal interpretation ... will deprive the land owner of rights commonly enjoyed by other properties in similar areas ...

3. That the granting of a variance will not confer upon a land owner any special privilege ...

4. That the variance request is not ... the result of actions by the land owner, nor that the request arises from any condition relating to land or building use, either permitted or non-conforming, on any neighboring property;

5. That the granting of the variance will not adversely affect water quality or adversely impact fish, wildlife, or plant habitat.... [Emphasis added.]

The ordinance requires an applicant to meet all of the requirements. Thus, though it may be argued that this is an area variance and that under most zoning codes the applicant's burden would be limited to showing practical difficulty, the statute at issue here is mandatory and requires not an either/or showing but the satisfying of *all* of the requirements,

*i.e.,* the showing of an "unwarranted hardship," *and* special features of the site *and* special conditions and circumstances, *and* deprivation of rights enjoyed by others in the neighborhood if the application is not granted.

Additionally, if *all* of the above is established by substantial evidence, an applicant must additionally show, also by substantial evidence, that if the variance is granted the applicant will not receive a special privilege *and* that the variance request does not result from the action of the landowner *and* that the request does not result from any condition relating to permitted or non-conforming buildings or uses on neighboring property *and* that the variance, if granted, will not have adverse environmental impact. The St. Mary's County ordinance, especially in light of the Commission's approval function, is as strict as can be imagined. We have seen none tougher.

In essence, the developmental/environmental battle must, of necessity, be fought by the developmental or County interests during the County program's adoption. If the battle *was* fought in St. Mary's County, it was lost or won then. Once an ordinance such as that in the case *sub judice* becomes effective, an applicant's burden cannot generally be met by references to Thoreau's hut on Walden Pond.[5] Once these types of variance provisions are enacted, the result is generally that any project that does not cause damage to the environment will also be of such an inconsequential nature that it will not constitute an unwarranted hardship for it to be denied. Appellee Enoch, in his letter of application for a variance dated July 10, 1991, gave part of his reason for the request: "[T]his point would be an ideal location to construct a gazebo for the purpose of utilizing the beautiful view that is found on that point." He then made a general claim that "[a] strict construction of the regulation would not merely result in an inconvenience but actually create a serious and unnecessary hardship" because he had "hoped to develop[ ] the point."

---

5. The trial judge noted that under the program imposed upon St. Mary's County by the Critical Area Commission, Thoreau's hut could not have been built. He was correct.

He asserts that the land conditions are unique because "only a small portion of [the land] has buildings on it." He then claims that this situation is generally different in respect to other properties within the same zoning classification. The remainder of his application generally parrots the language of the statute in addressing the remaining requirements.

In the zoning context the "unique" aspect of a variance requirement does not refer to the extent of improvements upon the property, or upon neighboring property. "Uniqueness" of a property for zoning purposes requires that the subject property have an inherent characteristic not shared by other properties in the area, *i.e.*, its shape, topography, subsurface condition, environmental factors, historical significance, access or non-access to navigable waters, practical restrictions imposed by abutting properties (such as obstructions) or other similar restrictions. In respect to structures, it would relate to such characteristics as unusual architectural aspects and bearing or party walls.

An example of uniqueness is found in the use variance case of *Frankel v. Mayor and City Council*, 223 Md. 97, 104, 162 A.2d 447 (1960), where the Court noted: "[H]e met the burden: the irregularity of the ... lot ... that it was located on a corner of an arterial highway and another street, that it is bounded on two sides ... by parking lots and public ... institutions, that immediately to its south are the row houses...."

In some zoning ordinances, the specialness or uniqueness requirement is more explicitly set out. The Court of Appeals, in *Ad + Soil, Inc. v. County Comm'rs*, 307 Md. 307, 339, 513 A.2d 893 (1986), quoted from the Queen Anne's County ordinance:

Where by reason of the exceptional narrowness, shallowness, or unusual shape of a specific ... property ..., or by reason of exceptional topographic conditions or other extraordinary situation or special condition of ... property ... the literal enforcement ... would make it exceptionally

difficult ... to comply ... and would cause unwarranted hardship and injustice....

The general thrust of the meaning of special features or uniqueness of property for variance purposes relates to the type of uniqueness discussed by the Court in *Ad + Soil, Inc.*

The evidence in this case relied upon by appellees is just the opposite. Mr. Enoch proffered that the neighboring properties were similarly situated, including having points of land with views. His argument was basically that his land was unique because he had not already built on the point of land and the other property owners had. In other words, his uniqueness claim was based on the existence of permitted (or probably non-conforming, the record is not clear as to which) structures and uses on adjoining properties. Mr. Enoch did not offer any evidence establishing any zoning uniqueness as to his property, and the basis upon which he attempted to argue uniqueness is expressly forbidden by section 4 of the ordinance. ("That the variance request [does] not ... arise[ ] from any condition relating to land or building use, either permitted or non-conforming, on any neighboring property.")

The evidence presented at the original hearing before the Board included, in part, the following testimony by appellee Enoch:

[I]f we're not permitted to use this point for a scenic view, that it would be a deprivation of the rights of the property owner, maybe not a great deprivation, but it's uniquely there for the purpose of putting up something to observe this beautiful view....

. . . .

... The only place to go for any kind of a view of the water is either straight ahead ... where I have my dock, or over here where we're talking about. I have my dock, I already have a view of the water there and I have a view from the house so-to-speak ... the view from the house is a view of the very end of the cove. The view from up here [the subject site] leads out to the Patuxent River ... you

can see four or five hundred yards.... I wouldn't put a gazebo any other place that would be ... satisfactory.

[COMMISSIONER]: Okay, and you want the gazebo ... as a place for retreat, a place to give you the opportunity to contemplate, to read....

MR. ENOCH: Sure....

....

MR. ENOCH: ... I think every property in that area has their homes built on those little points that stick out.

At this point the evidentiary stage of the initial hearing was concluded. The members of the Board then discussed the case.

MR. FITZGERALD: ... This is one of those solemnly [King Solomon?] decisions ... that speaks ... to the ludicrousness of the ... critical areas thing.... At the same time ... there are conditions ... within the ordinance that we're required to uphold.... I don't feel comfortable denying the applicant outright ... I don't feel comfortable in voting against the ordinance.... *But in spite* of the fact that the applicant hasn't proven, you know, the variance, or the requirement for variance, he still has a strong case.... [Emphasis added.]

That testimony we have recounted comprises all the evidence offered by Mr. Enoch before the Board to meet his burden of satisfying the variance provision's requirements.

Also in evidence before the board was the staff report of the Department of Planning and Zoning of St. Mary's County. The staff report explicitly recommended that the requirement of a showing of special circumstances and unwarranted hardship had not been made and that if the variance was granted it might constitute a special privilege granted to this property in violation of the ordinance.

During the circuit court hearing, the judge initially noted that:

So, it is a case of a gazebo and a fellow who wants to look at the view, is that it?

The court then asked the attorney for St. Mary's County to respond to appellant's assertions:

THE COURT: ... [T]his record has to show, in order to get one of these variances, that not to grant it to him would cause him an unwarranted, undue hardship, and the administrative record just doesn't show that.

That is what he is saying.

. . . .

[THE COUNTY ATTORNEY]: Whether it is an unwarranted hardship or not is not for me to decide. The Board of Appeals ruled that it was. They found facts to—sufficient to conclude that Mr. Enoch would face an unwarranted hardship if he could not build his gazebo.

The *only* reason for building the gazebo, I believe, is to have that view of the water. Without that, there is no reason for a gazebo.

. . . .

So, I think the whole key is unwarranted hardship.

Mr. Enoch then proffered, in part:

So, there is a desire to use that point for aesthetic purposes to view the water. . . .

And the hardship we are talking about is a reasonable use of the property by an individual.

The applicant, Mr. Enoch, the county, and the trial judge for that matter, when discussing the reasonable use of the property seem to restrict their considerations to just the part of the property where Enoch desires to construct the gazebo. That is incorrect. The property at issue here is the 4 + acre site already developed with a ranchhouse of approximately 1,100 square feet with extensive decking, an improved walkway, and a pier, from which expansive views are present. Thus, the property already is subject to a reasonable use.

The instant case focuses on unwarranted hardship; it is a denial of *reasonable* use that creates an unwarranted hardship. If reasonable use exists, generally an unwarranted hardship would not. In the present case, extensive reasonable

use is already being made of the property. Under the appellees' theory, it would be unreasonable and an unwarranted hardship to deny Mr. Enoch anything he wants.

In a case resolved on standing issues, the Court of Appeals nevertheless stated:

> To grant a variance the Board must find from the evidence more than that the building ... would be suitable or desirable or could do no harm or would be convenient for or profitable to its owner. The Board must find there was proof of "urgent necessity, hardship peculiar to the particular property, and a burden upon the owner not justified by the public health, safety and welfare."

*Kennerly v. Mayor and City Council,* 247 Md. 601, 606–07, 233 A.2d 800 (1967). *See also Marino v. Mayor and City Council,* 215 Md. 206, 137 A.2d 198 (1957) ("As a general rule, ... [variances] are granted sparingly, and under exceptional circumstances. To do otherwise would decimate zonal restrictions and eventually destroy all zoning regulations...."); *Carney v. City of Baltimore,* 201 Md. 130, 137, 93 A.2d 74 (1952).

The Court of Appeals in *Park Shopping Center, Inc. v. Lexington Park Theatre Co.,* 216 Md. 271, 276–77, 139 A.2d 843 (1958), in respect to the ordinance there being applied, opined:

> [T]he Zoning Ordinance for St. Mary's County ... states that the Board shall have power "[t]o authorize ... such variance ... where, owing to special conditions, the enforcement ... will result in *unwarranted hardship and injustice....*" It is in language typical of a variance as distinguished from an exception....

> ... "The criterion for determining unnecessary hardship is whether the ... restriction when applied to the property in the setting of its environment is so unreasonable as to constitute an arbitrary and capricious interference with the basic right of private ownership." [Citations omitted.]

Variances have been rejected under more compelling circumstances than that presented by the evidence in this case. *See, e.g., Ad + Soil, Inc., v. County Comm'rs,* 307 Md. 307,

340, 513 A.2d 893 (1986) (ignorance of set back requirements for sewage sludge facility when property purchased was not a hardship); *Burns v. Mayor and City Council,* 251 Md. 554, 558–59, 248 A.2d 103 (1968) (financial crisis generally not hardship, especially when same crisis applies to other property in neighborhood); *Salisbury Bd. of Zoning Appeals v. Bounds,* 240 Md. 547, 554, 214 A.2d 810 (1965) (self-inflicted hardship); *Pem Constr. Co. v. Mayor and City Council,* 233 Md. 372, 378, 196 A.2d 879 (1964) (non-feasibility of building residential houses on subject property because of its location near a shopping center and parking lots—"facts . . . fall substantially short of . . . a taking in a constitutional sense."); *Mayor & City Council v. Polakoff,* 233 Md. 1, 9, 194 A.2d 819 (1963) (earlier variances granted to other properties not grounds for variances); *Carney v. City of Baltimore,* 201 Md. 130, 136–37, 93 A.2d 74 (1952) (side yard set back for convenience, *i.e.,* to accommodate disability of wife of applicant not hardship); *Cleland v. Mayor and City Council,* 198 Md. 440, 445, 84 A.2d 49 (1951) (parking inconvenience for doctors not a hardship); *Gleason v. Keswick Improvement Ass'n, Inc.,* 197 Md. 46, 78 A.2d 164 (1951); *Easter v. Mayor and City Council,* 195 Md. 395, 400, 73 A.2d 491 (1950).

The only evidence presented is that appellee, Enoch, wished to read and contemplate on the point (we presume the purpose of the gazebo was to furnish shade and protection from the rain as a gazebo is not inherently necessary in the process of reading and contemplation). A desire to have a gazebo of approximately 234 square feet in which to contemplate at a particular spot when that gazebo is not permitted at that location is not evidence of an unwarranted hardship. This is especially true when appellant has an additional 178,361 square feet of property in which to contemplate, much of which is outside the buffer or already in place in the creek or near the creek.

### Resolution

As we see it, there was no evidence supporting any special features peculiar to the subject site. There was no *evidence—*

as opposed to a statement—of unwarranted hardship. Because the evidence is non-existent on these points, it is immaterial that there may have been some minimal evidence of little or no environmental damage or that the variance, if granted, would not confer a special privilege on the applicant. *All of the requirements* must be met and proved by substantial evidence. They were not. As we said in *Neuman:*

> It is crystal clear that the Board acted not only without "substantial evidence", but without any evidence, to support its findings, and its decision should have been reversed by the hearing judge.

*Neuman,* 23 Md.App. at 17, 325 A.2d 146. We hold, therefore, as we did in *Anderson:*

> Based on the record before us, we find that the question of whether the strict application of the ... requirement would result in an unnecessary hardship to the applicant by depriving him of the reasonable use of his land was not fairly debatable. The action of the Board of Appeals in granting the variances was arbitrary and capricious and cannot be sustained.... Accordingly, the order of the lower court affirming the grant of the variance[ ] ... shall be reversed.

*Anderson,* 22 Md.App. at 42, 322 A.2d 220 (citations and footnote omitted).

In light of our decision, the other issue raised by appellant need not be addressed except that we note appellant's second issue appears to have merit.

■ We note in concluding that administrative agencies are bound to apply the ordinances they administer. Lip service to, and defiance of, the County's ordinances because of dislike of the critical area legislation is inappropriate. Dislike for a statute is never sufficient justification to ignore it. Additionally, while we have occasionally commented on the planning staff's functional limitations, the Board here would have been well advised to pay more attention to the recommendations of its professional staff.

JUDGMENT REVERSED; COSTS TO BE PAID BY APPELLEES.