767 A.2d 922

**James RIFFIN,**

v.

**PEOPLE'S COUNSEL FOR BALTIMORE COUNTY, Maryland, et al.**

**No. 3002, Sept. Term, 1999.**

Court of Special Appeals of Maryland.

March 2, 2001.

James Riffin, Timonium, for appellant.

Peter Max Zimmerman and Carole S. Demilio, Towson, for appellees.

Submitted before MOYLAN,* SONNER and PAUL E. ALPERT (retired, specially assigned), JJ.

MOYLAN, Judge.

The appellant, James Riffin, challenges an Order issued by Judge Thomas J. Bollinger in the Circuit Court for Baltimore County affirming the decision of the Baltimore County Board of Appeals, which denied his petitions for a special hearing, special exception, and five separate zoning variances. On appeal, he contends:

1. that the Board erred in finding that the appellant's proposed use of the property constituted a "bungee jumping operation"; and

2. that the Board acted arbitrarily and capriciously in denying his petitions.[1]

At some point in the spring of 1998, the appellant petitioned the Baltimore County Zoning Commissioner for a Special Hearing, for a Special Exception, and for nine area parking and sign variances in an effort to operate a "Commercial Recreational Facility" at 1941 Greenspring Avenue Drive in Timonium. At that time, there existed on the property an old one-story building which was rented for office space. The property was zoned for M.L. (Manufacturing–Light). It was the appellant's intention in seeking the exception and the variances to create a commercial/recreation facility that would accommodate bungee jumping.

On June 1, 1998, the Zoning Commissioner granted four of the requested nine variances for existing non-conforming front and side-yard setbacks but denied all of the other requests. The appellant appealed that decision to the Baltimore County Board of Appeals ("the Board") and a three day public hearing

---

* Moylan, J., participated in the hearing and conference of this case while an active member of this Court; he participated in the adoption of this opinion as a retired, specially assigned member of this Court.

1. We note that in his brief to this Court, the appellant raised five issues with approximately twenty subcontentions. We have condensed those subcontentions into two.

began on November 25, 1998.[2] In the course of that hearing, the Board heard extensive testimony from the appellant regarding his plans for the property. The Board also heard testimony from adjacent property owners, from the Office of the People's Counsel, and from a representative from the Greater Timonium Community Council, all of whom testified in opposition to the appellant's petitions.

On December 31, 1998, the Board issued an extensive written Opinion denying the appellant's request for both the Special Hearing and Special Exception for bungee jumping and for the requested variances that had been denied by the Zoning Commissioner. The appellant appealed to the Circuit Court for Baltimore County. On October 4, 1999 a hearing was held before Judge Bollinger. On October 7, Judge Bollinger affirmed the Board's decision, finding that it was supported by substantial evidence and was not premised on any error of law. The appellant noted this timely appeal.

With regard to the standard of review to be applied in a case such as this, we explained in *Stover v. Prince George's County*, 132 Md.App. 373, 380–81, 752 A.2d 686 (2000), that:

[w]hen reviewing a decision of the administrative agency, this Court's role is "precisely the same as that of the circuit court." "Judicial review of administrative agency action is narrow. The court's task on review is *not* to 'substitute its judgment for the expertise of those persons who constitute the administrative agency."

Rather, "[t]o the extent the issues on appeal turn on the correctness of an agency's findings of fact, such findings must be reviewed on the substantial evidence test." The reviewing court's task is to determine "whether there was substantial evidence before the administrative agency on the record as a whole to support its conclusions." *The court cannot substitute its judgment for that of the agency, but*

---

2. The public hearing was held on November 25, December 15, and December 17, 1998.

*instead must exercise a "restrained and disciplined judicial judgment so as not to interfere with the agency's factual conclusions."*

(Citations omitted; emphasis supplied).

 The appellant first contends that the trial court erred in denying his petition for a Special Hearing and a Special Exception in order to accommodate bungee jumping. The appellant specifically contends that the trial court erred in finding that his proposed use of the property would amount to a "bungee jumping operation," which both parties agree is prohibited in Maryland,[3] rather than a "recreational use," which is permissible. We are not persuaded.

In its Opinion denying the appellant's request for a Special Hearing and Special Exception, the Board set out, in great detail, its findings with respect to the appellant's proposed use:

> The Board has carefully considered the testimony produced and the numerous exhibits of the evidence admitted and items marked for identification and weight assessment. This Board's initial review involved bungee jumping and how it is addressed in the Maryland Code. A review of the law and supporting documents afforded the Board members some insight into the thinking of the legislature on this subject. ... *The Board concluded that the bungee jumping operations as proposed by the appellant/petitioner was in actuality a bungee jumping operation.* Regardless of

---

**3.** Md.Code, Business Regulation, § 3–503 specifically provides:

§ 3–503. **Prohibition on bungee jumping operation.**

(a) *Definitions.*—(1) in this section the following words have the meaning indicated.

(2) "Bungee jump" means jumping or falling by an individual from a height while attached to a rope or cord that is elastic, rubber, or latex.

(3) "Bungee jumping operation" means an operation that allows an individual to bungee jump for a fee or dues.

(b) *Prohibition.*—A person may not conduct a bungee jumping operation.

(c) *Penalties.*—A person who violates subsection (b) of this section is guilty of a misdemeanor and, on conviction, is subject to a fine not exceeding $2,500 or imprisonment not exceeding 6 months or both.

whether using the word "operation" or the word "activity," it is semantical and one resembles the other. The inference regarding fees came out in the testimony by a crane operator who acknowledged that he was paid by Mr. Riffin for operating the crane, and that he expected to continue on as a crane operator if Mr. Riffin were allowed to have a bungee jumping operation. As well, Mr. Riffin indicated that individuals would be able to rent the crane and /or any needed equipment in order to perform bungee jumping activities. *These representations produce the appearance of being a bungee jumping operation, which is not allowed by Maryland law, this would not be a permitted use under the Baltimore County Zoning Regulations ["BCZR"].*

The Board then explored whether the appellant's proposed use could in any way be viewed as a Commercial Recreational Facility, a permissible use for the property under the zoning regulations. In rejecting the appellant's contention, the Board stated:

The Board then looked at the definitions of Commercial Recreational Facilities under BCZR 101.... *The definition notes that a commercial recreational facility shall not include an amusement park or similar use.* Throughout the numerous discussions as to what bungee jumping would be considered, it came up that it was frequently done in conjunction with amusement-like operations and was described by expert witnesses as a "thrill seeking activity." It was noted that State legislation regarding bungee jumping was put in that Section of the Annotated Code as amusement activities.

In rejecting the appellant's final two arguments with respect to his request for a Special Exception, the Board found 1) that bungee jumping did not qualify as a permitted use under Section 253 of the BCZR, which permits practice or physical training conditioning facilities and fields for amateur or professional sports organizations; and 2) that bungee jumping did not qualify as a use permitted without special exception under Section 270 of the BCZR 2–115 Schedule of Special Exceptions. That Schedule provides that a community build-

ing, swimming pool, or other structural or land use devoted to civic, social or recreational and educational activities is a use permitted without special exception.

■ The appellant is correct in that a requested special exception should be granted unless there is substantial evidence that it would have an adverse effect above and beyond those inherently associated with such a special exception use irrespective of its location within the zone. What the appellant fails to acknowledge, however, is that the Board made a factual finding that the appellant's proposed use of the property amounted to a "bungee jumping operation," not a "recreational facility." That finding alone required the Board to deny the petition for the special exception. The Board simply cannot grant a special exception for a use that is neither permitted by law nor by Baltimore County Zoning Regulations. There is substantial evidence in the record to support that finding by the Board. We see no error.

■ Additionally, we note that even assuming *arguendo* that the Board erred in finding that the appellant's proposed use was an illegal "bungee jumping operation," we would still hold that the Board did not err in denying the appellant's petition for a Special Exception. In its Opinion the Board carefully examined the criteria for granting a request for a special exception under Section 502.1 of the BCZR.[4] After

---

4. Section 502.1 specifically provides:

Before any Special Exception may be granted, it must appear that the uses for which the Special exception is requested will not:

 a. Be detrimental to the health, safety or general welfare of the locality involved;
 b. Tend to create congestion in roads, streets or alley therein;
 c. Create a potential hazard from fire, panic, or other dangers;
 d. Tend to overcrowd land and cause undue concentration of population;
 e. Interfere with adequate provisions for schools, parks, water, sewerage, transformations or other public requirements, convenience, or improvements;
 f. Interfere with adequate light and air;
 g. Be consistent with the purposes of the property's zoning classification nor in any other way inconsistent with the spirit and intent of these Zoning Regulations; nor

doing so, the Board found that the appellant failed to satisfy those criteria. We hold that there was substantial evidence on the record supporting that decision.

With regard to the appellant's variance requests, we note that a variance, if granted, permits a use that is normally prohibited and presumed to be in conflict with the ordinance. *North v. St. Mary's County,* 99 Md.App. 502, 510, 638 A.2d 1175 (1994). "An applicant for a variance bears the burden of overcoming the presumption that the proposed use is unsuitable. That is done, if at all, by satisfying fully the dictates of the statute authorizing the variance." *North,* 99 Md.App. at 510, 638 A.2d 1175.

In denying the appellant's requests for variances, the Board explained:

Section 307.1 of the *Baltimore County Zoning Regulations* states, in pertinent part, as follows:

"... [T]he County Board of Appeals, upon appeal, shall have and they are hereby given the power to grant variances from height and area regulations ... *only in cases where special circumstances or conditions exist that are peculiar to the land or structure which is the subject of the variance request and where strict compliance with the Zoning Regulations for Baltimore County would result in practical difficulty or unreasonable hardship* ... Furthermore, any such variance shall be granted only if in strict harmony with the spirit and intent of said height, area .. regulations, and only in such manner as to grant relief without injury to public health, safety, and general welfare."

As well, this Board enjoys the guidance provided by the Court of Special Appeals in *Cromwell v. Ward,* 102 Md.App. 691 [651 A.2d 424] (1995). In requiring a pre-requisite finding of "uniqueness," the Court defined the term and stated:

---

h. Be inconsistent with the impermeable surface and vegetative retention provisions of these Zoning Regulations.

In the zoning context the "unique" aspect of a variance requirement does not refer to the extent of improvements upon the property, or upon neighboring property. *"Uniqueness" of a property for zoning purposes requires that the subject property has an inherent characteristic not shared by other properties in the area, i.e.,* it shape, topography, subsurface condition, environmental factors, historical significance, access, or non-access to navigable waters, practical restrictions imposed by abutting properties (such as obstructions) or other similar restrictions. . . .

*It is this Board's finding that the proposed site is in no way unique, unusual or different from the other properties that are existent in this M.L.-I.M. zone.* The Maryland Department of Assessments and Taxation, real Property System map, shows just how similar in size and shape all of the properties are along Greenspring Drive. Testimony by Mr. Patton indicated that this property was consistent with others in the community, and he noted that the gentle slope off of Greenspring Drive was consistent with other properties, further noting that some chose to fill in their properties before building and have entrances at the rear of their locations. . . . At no time in the hearing did the appellant entertain any historical significance to the site nor were environmental or subsurface conditions documented. Mr. Riffin did testify as to the damage to the interior of his building but did not document the same with photographic exhibits, receipts for repairs or documentation by some authority regarding the nature or extent of this damage. There was no testimony or evidence regarding abutting properties restricting his activities or imposing any unique characteristics upon his site. *In the absence of an initial finding of uniqueness, the inquiry under Section 307.1 stops and, in this case, the three variances must be denied.*

(Emphasis supplied). We see no error.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.**