# ATWOOD,
*Petitioner,*

*v.*

# CITY OF PORTLAND et al,
*Respondents.*

## (No. 80-095, CA A20837)

637 P2d 1302

Edward J. Sullivan, Portland, argued the cause for petitioner. With him on the brief were Kenneth M. Elliott, Adrianne J. Brockman, Certified Law Student, and O'Donnell, Sullivan & Ramis, Portland.

Ruth Spetter, Deputy City Attorney, Portland, argued the cause and filed the brief for respondent City of Portland.

Michael H. Schmeer, Portland, argued the cause for respondents Clark Bingham, Stuart Bingham, Selwyn A. Bingham, Jr., and Sophia Bingham. With him on the brief was Black, Kendall, Tremaine, Booth & Higgins, Portland.

Before Richardson, Presiding Judge, * Joseph, Chief Judge, and Thornton, Judge.

RICHARDSON, P. J.

---

* Joseph, C.J., *vice* Van Hoomissen, J.

## RICHARDSON, P. J.

Petitioner appeals from an order of the Land Use Board of Appeals (LUBA) affirming an ordinance of the City of Portland which rezoned property owned by respondents Bingham and allowed variances to facilitate construction of a 31-unit condominium structure on the property. We affirm.

The Binghams and others applied for the zone change in late 1979. At that time, the property consisted of three parcels, which were zoned, respectively AO (high density apartments), A2.5 (low density apartments) and R7 (single family residential). The applicants sought to have the entire property rezoned A1 (medium density apartments) and also sought variances necessary to develop the property in accordance with their plans for the condominium building. Those plans are for a "stairstep" structure to be built against a steep and rocky slope which has been the site of landslides. The building will be ten stories high; however, because of the stepback design, its maximum height at any point will be six stories. The residential facilities will consist of 31 units of 3,600 square feet each (including outdoor terrace space). The characteristics of surrounding streets make off-street parking unfeasible, and the lowest two stories of the building will contain 63 parking spaces. In addition to its structural components, the development plan includes a site stabilization program which is expected to cost approximately one million dollars.

After a hearings officer and the Planning Commission recommended allowance of the proposed zone change and variances, petitioner appealed to the city council. The council approved the zone change and granted the following variances:

"1.  To increase lot coverage from 45 percent to 65 percent.

"2.  To increase building height from three stories and 45 feet to 10 stories and 115 feet.

"3.  To reduce the minimum side yards from 30 feet to 18 feet on the south and 10 feet on the north.

"4.  To increase the projection into the front yard from 30 inches to 5 feet.

"5. To increase the maximum height of an architectural wall in the front yard from 3 1/2 feet to 15 feet."

The variances were granted on the condition that further hearings would be required "should the [proposed] design * * * be substantially changed." The zone change was granted on the condition, among others, that the "[m]aximum density of units is to be 31."

■ In this appeal, petitioner's principal contention is that the city action amounted to the granting of a "use variance" and constituted a use of the "quasi-judicial hearings process to enact, in effect, a new zone to be applied to a particular parcel of land." Petitioner's point is that the combined effect of the variances is to make possible more residential occupancy of the building than is consistent with the medium density zone. Although petitioner does not appear to question that the 31 unit density is proper in that zone, he argues:

"* * * [I]t is not the number of units per se, but the mass of the building or the size of the structure, that should be considered. *See Frankland v. City of Lake Oswego,* 8 Or App 224, 493 P2d 163 (1972), *affirmed [as modified],* 267 Or 452, 517 P2d 1042 (1973). The structure, as approved, has sufficient floor space for at least 93 apartment units of a more typical 1,200 square-foot floor area. * * *"

Assuming, without deciding, that this argument has merit, petitioner's contention fails, because the zone change was granted on the express condition that the number of residential units in the building was limited to 31.[1]

Petitioner's next contention is that the variances "should not have been granted * * * because the record clearly establishes that the subject property may be developed without them." Petitioner argues that the variances were granted "to accommodate a specific development proposal and a specific architectural design" and were not necessary

---

[1] Petitioner suggests that "use variances" are either impermissible or should be subject to stricter scrutiny than "area variances," because the former are inherently more inconsistent with zoning patterns and the planning process. For the reasons indicated, we do not agree that the variances here have the effect of permitting a use which would otherwise be impermissible in the zone. Our discussion of petitioner's argument does not imply what, if any significance we ascribe to the distinction between "use" and "area" variances. *See Bienz v. City of Dayton,* 29 Or App 761, 779-80, 566 P2d 904, *rev den* 280 Or 171 (1977).

to avoid denial of *all* beneficial use of the land under the zoning classification.

Section 33.98.010(2)(b) of the Portland City Code allows "major variances" to be granted if

"A.   The variance is required in order to modify the impact of exceptional or extraordinary circumstances or conditions that apply to the subject property or its development that do not apply generally to other properties in the vicinity; or

"B.   The variance is required in order to allow enjoyment by the appellant of a property right possessed by a substantial portion of the owners of properties in the same vicinity, while resulting in the comparatively trivial detriment to the neighborhood."

The city council's findings clearly demonstrate that the decision to grant the variances were consistent with the code criteria. The council found that:

"All of the variances are required in order to modify the impact of exceptional and extraordinary circumstances and conditions that apply to the subject property and its development."

This general finding was followed by several specific ones illustrating that the variances were necessary because of extraordinary or exceptional conditions affecting the property and its development.

We therefore disagree with petitioner to the extent he is contending that the city's action was an impermissible use of the variance process under its code. Although it is not entirely clear whether petitioner is also arguing that the city code criteria for allowing variances are unlawful, if that is the argument, we disagree. Extraordinary or exceptional circumstances inherent in property can be a basis for the granting of variances. *See Lovell v. Independence Planning Comm.,* 37 Or App 3, 586 P2d 99 (1978).

Petitioner next attacks the adequacy of the city council's findings and the consistency of those findings with the city zoning code. An example of petitioner's arguments is that, although the council did make findings that the proposed variances met the four "general conditions" for granting variances under section 33.98.010(a) of the code, the council was required to but did not make a *separate* finding that

*each* of the variances satisfied *each* of the conditions. We conclude that the findings are adequate.

■        Petitioner's final argument is:

"Respondent's [the city's] findings do not address the impact of the zone change and variances on the future land use pattern of the neighborhood surrounding the subject property, and Respondent has only made the most conclusory findings regarding the physical impact of this massive condominium project on the surrounding neighborhood of single-family dwellings. No adequate factual base has been offered to substantiate Respondent's conclusory findings that the zone change is consistent with the public need and that the variances are consistent with the public interest. Therefore, Respondent's decisions do not comply with Goal 2, and LUBA erred in finding that Respondent's findings were supported by an adequate factual base."

LCDC's determination[2] on petitioner's Goal 2 contention, incorporated into LUBA's order, states as pertinent:

"* * * Nothing in Goal 2 suggests that a jurisdiction must make specific findings as to the effects of its land use actions on proposed or unadopted comprehensive plans. Because petitioner here did not specify how the city's decision might violate the proposed plan, we do not find a Goal 2 violation. * * *"

We agree.[3]

        Affirmed.

_____

[2] *See* Or Laws 1979, Ch 772, § 6.

[3] The city argues that petitioner's Goal 2 contention is "mooted" by the fact that LCDC acknowledged the city's comprehensive plan *after* LUBA's final order in this matter was issued. We held in *Fujimoto v. Land Use Board,* 52 Or App 875, 630 P2d 364, *rev den* 291 Or 662 (1981), that LUBA has no authority to consider a petition for review of a local land use decision where compliance acknowledgment has occurred before the petition with LUBA is filed and where the petition alleges only violations of statewide planning goals. The city's argument may be a logical extension of *Fujimoto.* Because our disposition of this case is not affected by it, we leave that question for LUBA to answer in the first instance.