651 A.2d 424

**David CROMWELL, et al.**

**v.**

**Arthur Thomas WARD, III.**

**No. 617, Sept. Term, 1994.**

Court of Special Appeals of Maryland.

Decided Jan. 4, 1995.

692

Michael Paul Smith (Thomas G. Bodie and Bodie, Nagle, Dolina, Smith & Hobbs, P.A., on the brief), Towson, for appellants.

Newton A. Williams (Nolan, Plumhoff & Williams, Chtd., on the brief), Towson, for appellee.

Argued before WENNER, CATHELL and MURPHY, JJ.

CATHELL, Judge.

Appellant, David Cromwell, appeals from the judgment of the Circuit Court for Baltimore County (Daniels, J., presiding) affirming the order of the Board of Appeals granting a height variance for an accessory building already built by appellee, Arthur Thomas Ward, III. Appellant poses the following questions:

I.    Whether the self-imposed or self-created hardship discussed in the Maryland case law on variances

requires an intentional act, such as ignoring or flaunting [sic] the zoning regulations.

II. Does the record before the Honorable Lawrence Daniels support a finding that had the accessory building been built in accordance with the height regulations of Baltimore County, the accessory building would necessarily require a different pitch from all other buildings on the property?

III. Can a difference in roof pitches between an accessory building and a home constitute a "practical difficulty or unreasonable hardship" within the meaning of § 307 of the Baltimore County Zoning Regulations?

While those questions are limited, appellant expands in his arguments supporting the questions and argues that

[t]he restrictions of the applicable ordinance, *taken in conjunction with the unique circumstances affecting the property,* must be the proximate cause of the hardship [Emphasis added.]

and

Section 307.1 requires that variances only be granted in cases where special circumstances or conditions exist *that are peculiar to the land or structure* which is the subject of the variance request.... [Emphasis added.]

and

Mr. Ward's property *is not unique* from the others in the Ruxton area. [Emphasis added.]

Although somewhat indirectly, appellant has pointed out an important aspect of the nature of the *variance* process, *i.e.,* it is at least a two-step process. The first step requires a finding that the property whereon structures are to be placed (or uses conducted) is—in and of itself—unique and unusual in a manner different from the nature of surrounding properties such that the uniqueness and peculiarity of the subject property causes the zoning provision to impact disproportionately upon that property. Unless there is a finding that the property is unique, unusual, or different, the process stops here and

the variance is denied without any consideration of practical difficulty or unreasonable hardship. If that first step results in a supportable finding of uniqueness or unusualness, then a second step is taken in the process, *i.e.*, a determination of whether practical difficulty and/or[1] unreasonable hardship, resulting from the disproportionate impact of the ordinance *caused by* the property's uniqueness, exists. Further consideration must then be given to the general purposes of the zoning ordinance.

What we have recently observed in Baltimore County, and in other jurisdictions as well, and what occurred in the case at bar, is a reversal of the required process. Instead of first determining whether the subject property is unusual or unique, the zoning authorities are first determining whether a practical difficulty or unreasonable hardship exists. That determination is then used to create a unique and unusual situation as to the subject property because surrounding properties do not experience the hardship or difficulty.

In the case *sub judice*, appellee's act of constructing a building of such a height as to produce a roof pitched at the angle he desired caused the roof to extend above the fifteen-foot height limit. This fact alone was found by the Board (and affirmed by the trial court) to make the property's problems unique. Simply stated, the variance that is desired (and the difficulties that would exist if it is not granted) cannot be the source of the first prong of the variance process—an inherent uniqueness of the subject property not shared by surrounding properties.

--------

**1.** Some ordinances use the conjunctive, "and," creating a requirement that both practical difficulty "and" unreasonable hardship exist. Because hardship is the most severe standard, this means that it is the standard used regardless of whether an area or use variance is sought. Some ordinances use the disjunctive, "or," to separate the two standards. These jurisdictions construe the ordinance to require the unreasonable hardship standard to be used when "use" variances are sought, because use variances are believed to be more disruptive of zoning goals and purposes, but require the lesser "practical difficulty" standard when "area" variances are sought.

## The Facts

Appellee's contractor, Donald S. Huber and Company, Inc. (Huber), prepared plans for a garage, wine cellar, and storage area on appellee's property. Using these plans, Huber, on appellee's behalf, applied for a building permit, noting on the application that it was to construct a two story "garage and wine cellar;" "[second] story to be used as storage, [first] floor for garage and wine testing room. Cellar will be for wine." The application indicates that some prior height indication was marked over on the application for a permit and a new mark was made indicating the anticipated height of the structure to be fourteen feet. Huber admitted that he had little experience with the zoning requirements for accessory buildings and was unaware of the height limitations. The County's automated tracking system, in creating its general permit application data on the subject property, noted: "Height: 14'" and "Stories: 2+ CELL."

The plans presented to the County included a "Left Side Elevation" but no height is shown on the elevation plan. Neither, as far as we have been able to find, does the plan contain a scale from which the "Left Side elevation" can be determined. The plans also include a "Front Elevation" from which actual proposed heights are also conspicuously, almost suspiciously, absent given that all other dimensions appear to be included on the plans.

We have, however, extrapolated from a horizontal distance indicated on the lower right-hand corner of the "Second Floor Plan" that fourteen feet five and one-half inches equals slightly over three and one-half inches on our ruler. It would appear that the front elevation plan indicates five and one-fourth inches on our ruler or approximately twenty-one and one-half feet in height. When measured in similar fashion, the left side elevation indicates a similar height. Thus, if the other measurements are correct, a method existed in which, even absent a scale, rough height elevations might have been discernable, though we are at a loss to understand why the

elevations were not given in feet and why the plans contained no scale.[2]

After receiving a building permit, appellee proceeded to construct the building that violated the fifteen foot height requirement. During the building process, inspections were made of footings, foundations, framing, and electrical service. Final occupancy was then given. Later, the building was discovered to be twenty-one feet in height.[3] Appellee then successfully applied for an after the fact variance. Appellant appealed to the Board of Appeals and it, in a two to one decision, granted the variance that the circuit court ultimately affirmed.

## The Law

The State Zoning Enabling Act was first passed in 1927 by Chapter 705 of the Acts of 1927. It has since been codified as Article 66B of the Annotated Code of Maryland (1957, 1988 Repl.Vol., 1994 Cum.Supp.). While it was generally believed that local subdivisions did not have to enact zoning regulations (and some did not), if enacted, they normally had to conform to the provisions of Article 66B.

Baltimore County, however, is a charter county and is exempt from many of the provisions in Md.Code Art. 66B. See Md.Code Art. 66B § 7.03 which provides "Except as provided in [sections not pertinent here] ... this article does not apply to the chartered counties of Maryland." Nevertheless, the language of Art. 66B relating to variances is virtually identical to the provisions of the Baltimore County ordinance.

---

**2.** Appellee, several times in his brief, states that the plans "clearly" show the height of the building. We are tempted to respond with a short rejoinder. We resist. The heights shown on the plans are not clearly shown—they are not shown at all—but must be computed, as we have done, without the benefit of a scale by a difficult reference to dimensions that are given for horizontal distances.

**3.** As we have said, the application, building permit and the county data indicated that its height was to be fourteen feet.

The Article 66B provision that provides for variance authority in local zoning ordinances is section 1.00(j).  As relevant to an area variance, this section defines a variance under Art. 66B as follows:

> [M]odification only of density, bulk, or area requirements in the zoning ordinance ... where *owing to conditions peculiar to the property, and not the result of any action taken by the applicant,* a literal enforcement ... would result in either, as specified by the local governing body in a zoning ordinance, unnecessary hardship or practical difficulty. [Emphasis added.]

The Baltimore County Zoning Ordinance in section 307, "Variances," provides, in relevant part, that variances from the ordinances provision, *i.e.,* height, may be granted

> only in cases where special circumstances or conditions exist *that are peculiar to the land or structure* which is the subject of the variance request *and* where strict compliance ... would result in practical difficulty or unreasonable hardship.  [Emphasis added.]

Accordingly, we shall, in our discussion of cases, refer extensively to cases under the provisions relating to Art. 66B as well as cases under the Baltimore County provisions.

The Baltimore County ordinance requires "conditions ... peculiar to the land ... and ... practical difficulty...."  Both must exist.  But the terms "practical difficulty" and "unreasonable hardship" are stated in the ordinance disjunctively.  Thus, at least as to variances other than use variances,[4] if the property is found to be unique, the practical difficulty standard would then apply.  We address practical difficulty at some length hereafter.  However, as is clear from the language of the Baltimore County ordinance, the initial factor that must be established before the practical difficulties, if any, are addressed, is the abnormal impact the ordinance has on a specific piece of property because of the peculiarity and

---

4.  It is not clear that section 307, "Variances," would even permit any use variances except perhaps as to signs or parking, as the section is framed primarily in terms of "area" variance requests.

uniqueness of *that* piece of property, not the uniqueness or peculiarity of the practical difficulties alleged to exist. It is only when that uniqueness is first established that we then concern ourselves with the practical difficulties (or unnecessary hardships in use variance cases).

Because we have discerned that some of the confusion in this and other jurisdictions may have arisen because of a tendency to intermingle the concepts of special exceptions/conditional uses [5] (where normally an applicant has an easier burden) and variances, we shall first discuss the cases (local as well as foreign) and treatises in which the terms are distinguished. We shall then discuss our cases and certain of those elsewhere in which the proper (and, on occasion, improper) applications of variance law have been applied. The Baltimore County statute will then be restated and applied to the facts and circumstances of the case *sub judice.*

### Special Exceptions (and Conditional Uses) and Variance—Distinguished

The treatise writers define the concept as:

A variance is an authorization for [that] ... which is prohibited by a zoning ordinance....

... [T]he difference between the two [variances and special exceptions] ... is of practical significance....

" ... [T]he variance and exception are designed to meet two entirely different needs. The variance contemplates a departure from the terms of the ordinance in order to preclude confiscation of property, while the exception

---

**5.** Matters relating to area issues are intended to be, and usually are, addressed as special exceptions. Matters relating to "use" issues are intended to be, and usually are, addressed as conditional uses. The terms, however, are, with some frequency, intermixed. Because both concepts envision that they are permitted so long as certain conditions are met, the indiscriminate use of the two terms has created little difficulty. In a pure sense, however, "conditional uses" refer to uses while exceptions normally apply to area, *i.e.*, yard, height, and density matters. In either event, conditional uses and special exceptions are permitted uses, so long as the conditions set out in the ordinance are met.

contemplates a permitted use ... [once] the prescribed conditions therefor are met."

... [A] variance is "authority ... to use his property in a manner forbidden ...," while an exception "allows him to put his property to a use which the enactment expressly permits."

... [T]he standards for ... exceptions are usually less stringent than in the case of variances. A Maryland court summarized this difference and the reason for it.

"A special exception ... is one which is controlled and ... permissible in a given zone. It is granted ... upon a finding conditions of the zoning ordinance are satisfied. A variance is authorized ... where the literal enforcement of its terms would result in unnecessary hardships."

3 Robert M. Anderson, *American Law of Zoning* § 18.02–03 (2d ed. 1977) (footnotes omitted) (quoting in part *Stacy v. Montgomery County,* 239 Md. 189, 193, 210 A.2d 540 (1965)). *See also Schultz v. Pritts,* 291 Md. 1, 11, 432 A.2d 1319 (1981); *People's Counsel v. Mangione,* 85 Md.App. 738, 748, 584 A.2d 1318 (1991).

A distinction commonly is made between [special] exceptions ... and variances.... An "exception" ... is a dispensation permissible where a board ... finds existing those facts ... specified in the ordinance as sufficient.... "... But zoning ordinances usually provide for another kind of dispensation, ... by which a variance ... may be authorized ... where a literal enforcement ... would result in unnecessary hardship."

8 Eugene McQuillin, *Municipal Corporations* § 25.160 (3d ed. rev. 1991) (footnotes omitted).

The general rule is that variances and exceptions are to be granted sparingly, only in rare instances and under peculiar and exceptional circumstances.... A variance should be strictly construed....

*Id.* § 25.162 (footnotes omitted). *See also* 5 Norman Williams, Jr. et al., *American Land Planning Law* § 133.01 (1985 rev.); 3 Arden H. Rathkopf, *The Law of Zoning and Planning*

§ 38.01 (4th ed. 1981); 3 E.C. Yokley, *Zoning Law and Practice* § 21–6 (4th ed. 1979); 3 Robert M. Anderson, *American Law of Zoning* § 14.55 (1968); Anderson, *supra* § 18.30 (2d ed.).

Maryland courts, and courts elsewhere, have generally made the same distinction.

> There is a marked distinction between "variance" and "special exception" in Montgomery County. A special exception ... is expressly permissible.... [A zoning board has authority to grant] variances from the strict application of this chapter when by reason of exceptional narrowness, shallowness, or shape of specific parcels of property ... or by reason of exceptional topographical conditions or other extraordinary situations ... of specific parcels of property, the strict application ... would result in ... unusual practical difficulties to, or exceptional or undue hardship....

*Stacy,* 239 Md. at 193, 210 A.2d 540.

Judge Hammond for the Court of Appeals noted in *Montgomery County v. Merlands Club, Inc.,* 202 Md. 279, 288–91, 96 A.2d 261 (1953):

> It is the common practice to join an application for an exception with an application for a variance, leaving it to the Board to decide on which ground it will grant the application. As a result, many cases discuss exceptions and variances without differentiation, yet the two do differ, and one important distinction is that where a specific use is permitted by the legislative body in a given area ... the application can be granted without a showing of hardship or other conditions which are necessary for the allowance of a variance....
>
> ....
>
> ... There is a distinction between ... the ordinance provisions ... in those cases [Baltimore City cases] and the facts and the ordinance provision in this case....

*See also* our case of *Martin Marietta Aggregates v. Citizens,* 41 Md.App. 26, 34–35, 395 A.2d 179 (1978).

A conditional use is not a variance. The primary difference between the two is that a conditional use is not an exceptional [6] use. A conditional use is a desirable use which is attended with detrimental effects which require that certain conditions be met.... While a variance is a departure from the terms of an ordinance, a conditional use is a permitted use ... so long as ... conditions are met. Therefore, conditional use grants cannot be encompassed within the ... statutory authority to grant variances.

*Eberhart v. Indiana Waste Systems, Inc.,* 452 N.E.2d 455, 459 (Ind.App. 3 Dist.1983) (citations omitted).

In a case affirming the granting of a special exception, the court in *Ash v. Rush County Bd. of Zoning Appeals,* 464 N.E.2d 347, 350 (Ind.App. 1 Dist.1984), opined:

A great deal of confusion has been generated ... because of the parties' failure to distinguish among rezoning amendments, variances, and special exceptions.... A variance involves a deviation ... from the legislated zoning classification.... A special exception involves a use which is permitted ... once certain statutory criteria have been satisfied. [Citations omitted.]

*See also Lindquist v. Board of Adjustment,* 490 So.2d 16, 18 (Ala.Civ.App.1986) ("Thus a special exception is not truly an exception to the zoning regulations at all") and ("a special exception may not be used as a substitute for a variance in order to avoid the ... burden of proving ... hardship"); *Wolfner v. Board of Adjustment,* 672 S.W.2d 147, 150 (Mo. App.1984) ("an exception is legislatively permitted whereas a variance is legislatively prohibited, but may be allowed for special reasons"); *Urban Farms, Inc. v. Franklin Lakes,* 179 N.J.Super. 203, 431 A.2d 163, 167 (A.D.), *cert. denied,* 87 N.J. 428, 434 A.2d 1099 (1981) (special exception and variance defined—case decided on zoning estoppel basis); *A.J. Grosek & Associates v. Zoning Hearing Bd.,* 69 Pa.Cmwlth. 38, 450

---

6. Exceptional is used here in its generic sense.

A.2d 263, 265 (1982); *Bell v. City Council,* 224 Va. 490, 297 S.E.2d 810, 813–14 (1982).

## VARIANCE—

### The First Step—Uniqueness or Peculiarity of the Subject Property

The general rule is that the authority to grant a variance should be exercised sparingly and only under exceptional circumstances. *See, e.g.,* A. Rathkopf, 3 The Law of Zoning and Planning § 38 (1979).

*Doorack v. Board of Adjustment,* 709 S.W.2d 140, 143 (Mo. App.1986). *See also McMorrow v. Board of Adjustment,* 765 S.W.2d 700, 701–02 (Mo.App.1989); *Taylor v. Board of Zoning Adjustment,* 738 S.W.2d 141, 144 (Mo.App.1987).

The requirement of uniqueness of the subject property, as we have indicated, is specifically set out for noncharter counties in the State enabling legislation, Md.Code Article 66B, and it is also set out in the Baltimore County ordinance applicable here. Additionally, it has been a necessary prerequisite almost since the inclusion of variance practice in zoning laws—and, before that, it was a part of Maryland case law. That case law is in accord generally with the case law elsewhere as we shall later discuss.

Early on, prior to the State specifically empowering local governments to delegate the granting of variances to zoning boards, the Maryland Court of Appeals found that the delegation of power to an administrative board to grant variances from the terms of a zoning "type" ordinance was improper because

the board of zoning appeals is in effect given the power to set aside or annul the ordinance ... with no more definite standard or guide than that such action may only be taken when there are "practical difficulties or unnecessary hardships".... [U]nder our system of written constitutions it is essential that they accomplish those ... objects in conformity with the restrictions, rules, and limitations which the law itself provides and not in disregard of them.... For such

phrases as "practical difficulties," "unnecessary hardships," "substantial justice," are too general and indefinite to furnish such a guide, or to mark the limits or control the exercise of the power conferred....

*Jack Lewis, Inc. v. Mayor and City Council of Baltimore*, 164 Md. 146, 151, 164 A. 220, *appeal dismissed*, 290 U.S. 585, 54 S.Ct. 56, 78 L.Ed. 517 (1933) (though it questioned the variance provisions under which the appellant sought a variance to operate a funeral home, it upheld the restriction prohibiting the funeral home in the first instance). In *Sugar v. North Baltimore Methodist Protestant Church*, 164 Md. 487, 165 A. 703 (1933), the Court likewise found the board's powers to grant special exceptions to permit a confectionery store where otherwise prohibited to be invalid for the same reasons.

In moving towards an acceptance of variance procedures, the Court noted that the "increasing need for garages in the cities was one of the main reasons for the rapid spread of zoning in this country." *Heath v. Mayor and City Council of Baltimore*, 187 Md. 296, 300, 49 A.2d 799 (1946). By the time of its decision in *Heath*, the Court had accepted the inevitable need for formal variance and special exception provisions, noting that "[c]haos would result if [a building engineer] were allowed to make exceptions or variances in his own discretion." 187 Md. at 301, 49 A.2d 799. The Court further pointed to the special exception powers of the Board of Zoning Appeals as a legally acceptable alternative. The Court also observed that, in response to its decisions in *Jack Lewis* and *Sugar*, the city had amended the Baltimore City ordinance to incorporate additional standards to guide the Board. The Court then correctly defined an exception as "a dispensation permissible where the Board ... finds ... those facts ... specified in the ordinance...." *Id.* 187 Md. at 303, 49 A.2d 799.

It was then that the court, for the first time that we can discern, combined exceptions and variances when discussing conformity to the rules in regard to the grant of either. This is the first instance where the two concepts were intermingled with respect to the Baltimore City ordinance. To a certain extent, this intermingling has, from time to time, created some

confusion in the cases arising out of Baltimore City. Because of the proportionately larger number of cases arising out of that jurisdiction, that confusion can be seen in subsequent cases arising from other jurisdictions. This intermingling increased over the years and, during this time, Baltimore City amended its ordinance and eventually became subject to an ordinance that does not distinguish between variances and exceptions except as to the title of their respective sections. In other words, Baltimore City, by the terms of its ordinance, applies the same standards to both variances and special exceptions; this standard is the one used elsewhere for variances. Thus, the Baltimore City special exceptions procedure is one only by title. For all practical purposes, it is also a variance procedure.

Caution should always be used therefore when a court is concerned with special exceptions, as reliance on the cases from Baltimore City may well lead one to rely on inapposite zoning concepts and cases. Judge Marbury, for the Court of Appeals, noticed this unusual circumstance in *Dampman v. Mayor and City Council of Baltimore*, 231 Md. 280, 285, 189 A.2d 631 (1963) ("In Baltimore City there appears to be no distinction between the two terms. . . .").[7] We also attempted to indicate the problem in *North v. St. Mary's County*, 99 Md.App. 502, 510, 638 A.2d 1175 (1994), in footnote 3:

> Baltimore City's zoning code makes no distinction between special exceptions and variances. Its code treats special exceptions as if they were variances. . . . [I]t is generally inexact to rely on Baltimore City cases when a special exception is at issue in another jurisdiction, but would be appropriate when a variance is at issue.

In any event, as to variances, the Court of Appeals, applying the uniqueness standard, stated:

---

**7.** Another typical Baltimore City case in that regard is *Easter v. Mayor and City Council of Baltimore*, 195 Md. 395, 400, 73 A.2d 491 (1950), where the Court noted "facts to justify an exception ... [show] that the hardship affects the particular premises and is not common to other property in the neighborhood." This is a variance standard.

[I]t was incumbent upon the Marinos to have shown ... (ii) that the difficulties or hardships *were peculiar to the property in question in contrast with those of other property owners in the same district, and* (iii) that the hardship was not the result of the applicants' own actions.

*Marino v. Mayor and City Council of Baltimore*, 215 Md. 206, 218, 137 A.2d 198 (1957) (emphasis added). *Salisbury Bd. of Zoning Appeals v. Bounds*, 240 Md. 547, 214 A.2d 810 (1965), also involved the completion of structural improvements in violation of an ordinance and a subsequent request for an after the fact variance. The Court opined:

The only evidence before the Board as to hardship or injustice involving the property was the fact that repairs and alteration work had been substantially completed before an application for either a variance or a building permit had been made and that what had been done could not be undone without financial hardship to appellees....

240 Md. at 554, 214 A.2d 810. The Court first quoted from 2 Rathkopf, *The Law of Zoning and Planning*, § 48–1, and then noted:

"Where property, due to unique circumstances applicable to it, cannot reasonably be adopted to use in conformity with the restrictions ... hardship arises.... The restrictions of the ordinance, taken in conjunction with the unique circumstances *affecting the property* must be the proximate cause of the hardship.... [T]he hardship, arising as a result of the act of the owner ... will be regarded as having been self-created, barring relief...."

The instant case fits squarely within the above general rule.... [I]f the appellees had used proper diligence ... and then made accurate measurements ... [the resultant hardship could have been avoided]. The hardship ... was entirely self-created....

*Id.* at 554–55, 214 A.2d 810 (emphasis added). Had Ward's contractor, Huber, in the case at bar, checked the ordinance's height limitation, the situation that now exists could easily have been avoided. *See also Burns v. Mayor and City*

*Council of Baltimore,* 251 Md. 554, 559, 248 A.2d 103 (1968); *Pem Constr. Co. v. Mayor and City Council of Baltimore,* 233 Md. 372, 378, 196 A.2d 879 (1964) ("[There was] no evidence of any limitation ... by ... size of yards, irregularity of shape of land or buildings, topography, grade or accessibility"....); *Mayor and City Council v. Sapero,* 230 Md. 291, 186 A.2d 884 (1962); *Frankel v. Mayor and City Council of Baltimore,* 223 Md. 97, 104, 162 A.2d 447 (1960) ("It was incumbent ... to show that the hardship ... affected his particular premises and was not ... common to other property in the neighborhood.... [H]e met the burden...."); *Park Shopping Center, Inc. v. Lexington Park Theatre Co., Inc.,* 216 Md. 271, 277–78, 139 A.2d 843 (1958).

> Secs. 14(b), 14(d) and 16 ... have been held not to authorize a granting for the mere convenience to the owner but to require a showing of urgent necessity, hardship peculiar to the particular property....

*Mayor and City Council v. Polakoff,* 233 Md. 1, 9, 194 A.2d 819 (1963).

The Court in *Kennerly v. Mayor and City Council of Baltimore,* 247 Md. 601, 606–07, 233 A.2d 800 (1967), dismissed an appeal of the grant of a height variance for lack of standing, but, in doing so, nevertheless opined:

> Our dismissal of the appeal is not to be taken as showing that if the appeal properly was here we would affirm the Board. To grant a variance the Board must find from the evidence more than that the building allowed would be suitable or desirable or could do no harm or would be convenient for or profitable to its owner. The Board must find there was proof of *"urgent necessity, hardship peculiar to the particular property...."* ... Specific reasons, specific bases to support the finding must be revealed by the evidence before the Board. [Emphasis added, citation omitted.]

In *McLean v. Soley,* 270 Md. 208, 210, 310 A.2d 783 (1973), one of the few reported Maryland appellate cases approving of a variance, the applicant for an area variance in connection

with an application to build forty units asserted that it was his desire to retain the "present trees and natural growth, terrain, and topography which provides excellent drainage and natural screening and beauty." There was evidence that, if the applicant destroyed the existing trees, he could have built 330 units without needing a variance. It was established that a number of attractive trees along the western boundary would have to be destroyed absent a variance. The Court noted that "there was considerable evidence to show the natural beauty of these trees and their importance to the ecology." 270 Md. at 211, 310 A.2d 783. The Court, seeming to acknowledge that it was making a detour from Maryland variance law, opined:

> Given the unique facts of this case, we think those criteria are met by this evidence: That the construction of the buildings in strict compliance with the sideyard requirements would result in the destruction of the trees; that the preservation of trees in the construction of the first section had contributed to full occupancy ... that the benefits of retaining the trees would accrue to the general public; that greater density would result from strict compliance....
>
> . . . .
>
> Concededly, this is a close case, but it is nevertheless sufficient....

*Id.* at 215, 310 A.2d 783. We would have to agree that it is a close case. The opinion does not make mention that the practical difficulty resulted from the fact that the uniqueness of the property caused the ordinance to have a different impact on it than on adjoining property. Also, there was no evidence that the neighboring properties were in any way different than the subject property. If the presence of trees on a particular lot was unique, that might have been a basis, but the court did not make that connection. Thus, this case, coupled with *Loyola Federal Savings & Loan Assoc. v. Buschman*, 227 Md. 243, 176 A.2d 355 (1961), and *Frankel v. Mayor & City Council of Baltimore*, 223 Md. 97, 162 A.2d 447 (1960), is among the affirmances of variances that we perceive to be, at best, extremely close calls and, as we shall indicate, exceedingly rare.

The Court in the sludge storage case of *AD + Soil, Inc. v. County Comm'rs,* 307 Md. 307, 513 A.2d 893 (1986), reiterated the standards applicable to variances when it affirmed a trial court's affirmance of a zoning agency's denial of an area and other variances. The variances were necessary to satisfy the requirements for a conditional use permit to operate the sludge storage and distribution operation. The Court of Appeals noted that the trial court, in affirming the agency's denial of a variance, agreed that "the only hardships facing Ad + Soil were of its own making." 307 Md. at 317, 513 A.2d 893. After addressing the important preemption issues therein raised, the Court directed its attention to the area variances sought and, referring to the Board's findings, stated that, in Queen Anne's County, the Board's authority to grant variances was limited to a situation where "there are exceptional or extraordinary circumstances or special conditions applying to the property in question ... that do not apply generally to other properties ... in the ... district." *Id.* at 340, 513 A.2d 893. The Court concluded:

> The board declined to grant the variances, concluding that Ad + Soil's "hardship" was self-inflicted, and, in any event, that it was not the result of exceptional or extraordinary *characteristics* of the *land itself* and therefore not the kind of hardship cognizable under the Zoning Ordinance....
>
> We think the Board's decisions ... reflect no error of law.

*Id.* at 340–41, 513 A.2d 893 (emphasis added).

In *Red Roof Inns, Inc. v. People's Counsel,* 96 Md.App. 219, 224, 624 A.2d 1281 (1993), after noting the standard of review, we said:

> In reviewing the zoning authority's decision, the court must consider all of the evidence in the administrative record. The reviewing court's role, however, is confined to determining the legality of the procedure employed and whether the decision was fairly debatable in light of the evidence adduced before the zoning authority.

The role of this Court "is essentially to repeat the task for the circuit court; that is, to be certain the circuit court did not err in its review." [Citations omitted.]

We then discussed the legal standards to utilize in respect to variances construing the same statute that applies in the case at bar, saying that variances may be granted "where special circumstances or conditions exist *that are peculiar to the land* ... and where strict compliance ... would result in practical difficulty...." *Id.* (emphasis added). We noted that, in regards to area variances, we were only concerned that the conditions peculiar to the land in question presented practical difficulties. In concluding that the Board had not acted wrongly in denying the variance at issue (a sign variance), we noted: "Zoning matters, including sign variance requests, depend upon the unique facts and circumstances *of a particular location* and must be analyzed individually." *Id.* at 227–28, 624 A.2d 1281 (emphasis added).

In *North v. St. Mary's County,* 99 Md.App. at 512, 638 A.2d 1175, we held that the ordinance there required a finding that "special conditions or circumstances exist that are peculiar to the land...." We there stated that, in the zoning context, the term "unique" has a customized meaning:

In the zoning context the "unique" aspect of a variance requirement does not refer to the extent of improvements upon the property, or upon neighboring property. "Uniqueness" of a property for zoning purposes requires that the subject property have an inherent characteristic not shared by other properties in the area, *i.e.,* its shape, topography, subsurface condition, environmental factors, historical significance, access or non-access to navigable waters, practical restrictions imposed by abutting properties (such as obstructions) or other similar restrictions. In respect to structures, it would relate to such characteristics as unusual architectural aspects and bearing or party walls.

. . . .

In some zoning ordinances, the specialness or uniqueness requirement is more explicitly set out. The Court of Ap-

peals, in *Ad + Soil, Inc. v. County Comm'rs*, 307 Md. 307, 339, 513 A.2d 893 (1986), quoted from the Queen Anne's County ordinance:

> Where by reason of the exceptional narrowness, shallowness, or unusual shape of a specific ... property ..., or by reason of exceptional topographic conditions or other extraordinary situation or special condition of ... property ... the literal enforcement ... would make it exceptionally difficult ... to comply ... and would cause unwarranted hardship and injustice....

The general thrust of the meaning of special features or uniqueness of property for variance purposes relates to the type of uniqueness discussed by the Court in *Ad + Soil, Inc.*

*Id.* at 514–15, 638 A.2d 1175.

One indication of the general rule that variances are rarely appropriate is that, in our review of the reported Maryland cases since the creation of the state zoning enabling act in 1927, we have found only five reported Maryland cases in which the grant of a variance has been affirmed or the denial of a variance has been reversed. The cases are *McLean, supra; Stacy, supra; Sapero, supra; Loyola Federal Savings & Loan Assoc., supra* (a Baltimore County case); and *Frankel, supra.* All of these cases were decided over a twelve-year period and the last of them was decided more than twenty-one years ago. Three of them, *Frankel, Loyola,* and *McLean* appear to be somewhat at odds with accepted Maryland law. *McLean* was described by the Court as a "[c]oncededly ... close case...." *Frankel* has caused some confusion in that it has later been viewed by some as lowering the standards for the granting of variances. *Mayor and City Council of Baltimore v. Borinsky,* 239 Md. 611, 212 A.2d 508 (1965), involved one of the same issues that was presented in *Frankel, i.e.,* whether a zoning restriction so compromised the use of property as to constitute an unconstitutional taking absent the granting of a variance—a variance Frankel was granted. The Court noted that the trial court had found *Frankel* controlling. The Court of Appeals disagreed. The Court acknowledged

that Borinsky had the "same expert witness," "he was asked the same general questions ... and gave the same answers," and that the "economic suicide" present in *Frankel* was "doubly true in this instance." *Id.* 239 Md. at 624, 212 A.2d 508. The Court, nevertheless, made a factual distinction and declined to apply *Frankel.* Judge Barnes opined in dissent that, based on what the Court had done in *Frankel,* the facts for variances were stronger in *Borinsky. Sapero* and *Stacy* met traditional standards for the granting of variances. *Frankel, Loyola,* and *McLean* were anomalous cases.

In any event, nowhere in those five cases, or any others, has the Court of Appeals ever changed the Maryland rule relating to uniqueness and peculiarity of the subject property.

Cases from other jurisdictions are generally in accord.

The Supreme Court of Nebraska in *Bowman v. City of York,* 240 Neb. 201, 482 N.W.2d 537 (1992), reversed the grant of a variance for a structure after, pursuant to the variance, the structure was constructed. Citing an earlier Nebraska case, *Frank v. Russell,* 160 Neb. 354, 70 N.W.2d 306 (1955), and noting that the Nebraska statute had been made more specific in light of *Frank,* the court said 482 N.W.2d at 545: "[A] variance [may be granted] ... only if strict application of the regulation, because of the unusual physical characteristics of the property existing at the time of the enactment, [of the zoning ordinance] 'would result in peculiar and exceptional practical difficulties ... or exceptional ... hardships....' "

In *Shafer v. Zoning Bd. of Appeals,* 24 Mass.App. 966, 511 N.E.2d 635 (1987), the property owner had conveyed away several parcels from a larger tract leaving a parcel, the size of which was prohibited under the ordinance. The Board granted him a variance, the trial court reversed it, and the appellate court affirmed the trial court. The appellate court reiterated the trial court's finding:

> There was no evidence ... regarding "soil conditions, shape or topography of [the property] ... especially affecting [the property] but not affecting generally the zoning district in which it is located".... The ... argument that

the insufficient width ... constitutes a special circumstance of "shape" is unpersuasive, particularly as the deficiency is one which they themselves produced through subdivision of the land they originally owned at a time when the 125 foot width requirement pertained.

511 N.E.2d at 636–37 (citation omitted). *See also VanLand-schoot v. City of Mendota Heights,* 336 N.W.2d 503, 509 (Minn.1983) ("the plight of respondent was not due to circumstances 'unique to his property.' ... [S]ome of the problems were the result of illegal acts of respondent's predecessor in title, of which respondent was aware....")

In *St. Clair v. Skagit County,* 43 Wash.App. 122, 715 P.2d 165 (1986), a landowner applied for a variance of a lot width requirement on the grounds that the county had given him a permit to install a trailer on her fifty-foot wide lot even though the ordinance mandated a width of at least seventy feet. The zoning board, approving the variance, determined that she had applied for the permit in good faith. The Skagit County ordinance, as does the instant statute, provided that a variance had to be "because of special circumstances applicable to subject property, including size, shape, topography, location or surroundings...." 715 P.2d at 167. The code also required that an application for a variance include a narration that "special conditions and circumstances exist ... peculiar to the land...." *Id.* The court then noted that the applicant had done there what Ward attempts to do in the case *sub judice:*

> [The appellant] relied primarily upon the fact that the County issued a building permit ... and that she acted in good faith....

*Id.* at 168. The court responded: "Reasons for a variance must be reasons pertaining to the property itself.... Evidence of hardship or difficulty that will support a variance must relate to the land itself and not to the owner-applicant." *Id.* (citation omitted). The court added that "the 75–foot width and aggregation requirements do not put a burden on [appellant's] property which does not apply to other properties in the vicinity...." *Id.* at 169. In the case *sub judice,* the

Baltimore County fifteen foot height limitation for accessory buildings does not affect Ward's property alone; it applies to all of the properties in the neighborhood.

In *Walkingstick v. Board of Adjustment,* 706 P.2d 899 (Okla.1985), the zoning board, having failed to comply with notice requirements, granted a permit for an oil drilling well. Amoco had expended considerable sums before the board's omission was discovered. The relevant part of the ordinance involved was similar to the one in the instant case. After the court noted that the hardships alleged were not peculiar to the subject site, it stated the general rule that "a hardship created by the owner ... constitutes no valid basis for a variance.... [D]eprivation of an advantage does not constitute an unnecessary hardship." 706 P.2d at 904. It concluded:

The need to expose tools to the ravages of the environment may be peculiar to Amoco. But, the language of section 44–107(2) [as does the language in the Baltimore County ordinance] clearly refers to conditions peculiar to the property, *not to activities peculiar to the owner of such property.*

*Id.* at 904–05 (emphasis added).

In a decision somewhat difficult to understand, which carried the variance limitations to the extreme and predated the 1992 case of *Lucas v. South Carolina Coastal Council,* —— U.S. ——, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992), but had facts similar to *Lucas,* the Supreme Court of Delaware in *Baker v. Connell,* 488 A.2d 1303 (Del.Supr.1985), upheld a trial court's reversal of the grant of a variance even though the ordinance limited the use of applicant's entire lot to open space only. The zoning board had found that the property was unique because the entire property was zoned open space and *nothing* could be constructed there. The board permitted a variance to allow two semi-detached dwellings. The trial court reversed on the grounds that the 0–1 zoning did not make the property unique. The trial court noted that a need for a variance arises only when the plight of the property is unique in that it cannot reasonably be put to a conforming use. The trial court found that there was no evidence that the

property could not conform to open space land. The appellate court affirmed, stating:

[F]inancial return ... alone, never justifies a variance. As to the unique character of the land, the mere fact that it sits entirely within the 0–1 zone does not make it unique. There is no evidence that this lot is the only one of its type in Rehoboth. Nor does it become unique because it adjoins the R–2 zone containing multi-family units.

488 A.2d at 1309. Whether this Delaware opinion remains viable in light of *Lucas* and *Dolan v. City of Tigard,* —— U.S. ——, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994), is doubtful.

The case of *Xanthos v. Board of Adjustment,* 685 P.2d 1032 (Utah 1984), involved a factual scenario similar to the case *sub judice.* The Xanthoses received notice that they were in violation of the city zoning code. The building of a duplex by the Xanthoses caused a pre-existing dwelling to lose frontage on a public street and to violate set-back and parking requirements. The Xanthoses requested variances in reference to the violations. The court initially noted that, "in order to justify a variance ... the applicant [must] show ... that there are special conditions with regard to the property...." 685 P.2d at 1035–36. The court continued:

What must be shown ... is that the property itself contains some special circumstance that relates to the hardship complained of....

... The property is neither unusual topographically or by shape, nor is there anything extraordinary about the piece of property itself. Simply having an old building on land upon which a new building has been constructed does not constitute special circumstances.

. . . .

Hardship is not demonstrated by economic loss alone. It must be tied to the special circumstances, none of which have been proven here. Every person requesting a variance can indicate some economic loss. To allow a variance anytime any economic loss is alleged would make a mockery of the zoning program. Further, the Xanthos[es] brought

their losses upon themselves. The application affirmatively alleged ... that no dwelling existed....[8]

*Id.* at 1036–37 (footnotes omitted).

The Xanthoses also argued, in a fashion similar to the argument in the case *sub judice,* that the city should be estopped because the plot plan submitted to the city showed the dwelling and the fact that the city failed to realize it misled them to their detriment. The court noted, in rejecting the Xanthoses' argument: "[T]o hold that the city should have been put on notice ... in the face of an affirmative statement that no such dwelling existed, would put a premium on prevarication ... and ... shift the burden of proof in variance cases to the city. None of these results is acceptable." *Id.* at 1038. In the case at bar, appellants' application for the permit contained a clear statement that he would comply with the zoning requirements. His plan's elevation schematics contained neither elevation dimensions nor scale. While the zoning inspectors might have been able to extrapolate dimensions from other schematics, they certainly were not required to do so in light of appellants' affirmative statement of compliance.

*See also Chambers v. Smithfield City,* 714 P.2d 1133, 1135 (Utah 1986), where the court stated: "[T]here is no evidence of special conditions attached to the property itself which do not also attach to other property in the vicinity. The property is neither unusual topographically or by shape, nor is there anything extraordinary about the piece of property itself." (Footnote omitted.) In a case involving the conversion of a garage into a dwelling, the Supreme Court of Virginia in *Prince William County Bd. of Zoning Appeals v. Bond,* 225 Va. 177, 300 S.E.2d 781 (1983), reversed a trial court decision reversing a zoning board's denial of a variance. The court noted that the conversion was underway when the Bonds discovered a need and applied for a variance. It opined that,

---

8. The application and plans in the case *sub judice* were, at best, vague and unclear as to the height of the structure.

in order to grant a variance, the hardship allegedly created by the ordinance must "not [be] shared generally by other properties in the same zoning district and the same vicinity." 300 S.E.2d at 783. It then held: "The limitation imposed by the zoning ordinance is one shared by all property owners in the A–1 district." *Id.*

The court in *Richardson v. Town of Salisbury,* 123 N.H. 93, 455 A.2d 1059, 1061 (1983), noted:

We have defined unnecessary hardship as follows:

"A hardship exists only if due to special conditions *unique* to a *particular parcel of land,* the ordinance unduly restricts the use.... The hardship must relate to the special character of the land rather than to the personal circumstances of the landowner." [Emphasis added.]

*See also Margate Motel, Inc. v. Gilford,* 130 N.H. 91, 534 A.2d 717 (1987); *Ryan v. City of Manchester Zoning Bd. of Adjustment,* 123 N.H. 170, 459 A.2d 244 (1983).

In *Sibley v. Inhabitants of the Town of Wells,* 462 A.2d 27, 30–31 (1983), the Supreme Judicial Court of Maine upheld the denial of a variance, holding:

[T]he need for a variance [must be] due to the unique circumstances of the property and not to the general conditions in the neighborhood;

. . . .

... [T]he hardship [must] not [be] the result of action taken by the appellant or a prior owner.

. . . .

... However, the mere fact that the lot is substandard is not a unique circumstance; all the undeveloped lots in that neighborhood are of substandard size....

... However, when a landowner purchases land with actual or constructive knowledge of the zoning restrictions, he may not be granted a variance on the grounds of undue hardship.

*See also Williams v. Salem Township,* 92 Pa.Cmwlth. 634, 500 A.2d 933 (1985) *alloc. denied,* 516 Pa. 615, 531 A.2d 781 (1987);

*Hersh v. Zoning Hearing Bd. of Marlborough Township,* 90
Pa.Cmwlth. 15, 493 A.2d 807 (1985); *Serban v. Zoning Hear-
ing Bd. of the City of Bethlehem,* 84 Pa.Cmwlth. 558, 480 A.2d
362 (1984) (burden sustained); *Davis v. Zoning Bd. of Adjust-
ment,* 78 Pa.Cmwlth. 645, 468 A.2d 1183 (1983) (burden sus-
tained); *Malakoff v. Zoning Bd. of Adjustment,* 72 Pa.
Cmwlth. 109, 456 A.2d 1110 (1983); *Immordino v. Zoning
Hearing Bd.,* 65 Pa.Cmwlth. 79, 441 A.2d 818, 821 (1982)
("[P]roperty owner must sustain the heavy burden of proving
that the zoning ordinance imposes an unnecessary hardship
*which is unique to his particular property....*") (Emphasis
added.)

> A prerequisite to the granting of a hardship zoning variance
> is the presence of an exceptional and unique hardship to the
> individual landowner, *unique to that parcel* and not shared
> by other property owners in the area.... Indialantic's
> zoning restrictions are common difficulties shared by all
> other oceanfront lot owners in the area, and are therefore
> not the unique hardship required to support a variance.

*Town of Indialantic v. Nance,* 400 So.2d 37, 40 (Fla.App. 5th
Dist.1981), *aff'd,* 419 So.2d 1041 (1982) (citation omitted). *See
also Fort Lauderdale Bd. of Adjustment v. Nash,* 425 So.2d
578, 579 (Fla.App. 4th Dist.1983); *City of Naples v. Clam
Court Marina Trust,* 413 So.2d 475, 477 (Fla.App. 2d Dist.
1982); *Lakeshore Property Owners Ass'n v. City of New
Orleans Zoning Bd. of Appeals and Adjustments,* 481 So.2d
162, 168 (La.App. 4th Cir.1985), *cert. denied,* 494 So.2d 674
(1986).

We mentioned earlier that there are very few Maryland
cases upholding the grant of a variance (or the reversal of a
denial). We likewise note that this is also the case in foreign
jurisdictions. We mentioned two cases from Pennsylvania
above where this occurred. We now discuss several others.

A minimum lot area variance was affirmed in *Russell v.
District of Columbia Bd. of Zoning Adjustment,* 402 A.2d
1231 (D.C.App.1979), where, due to the size of the lot, no
viable economical use of the property could be had without the

variance. It was determined that the lot was the only lot in the area that had been subdivided into smaller lots prior to the adoption of the zoning ordinance. The Supreme Court of New Hampshire reversed the denial of a variance in *U–Haul Co. of New Hampshire & Vermont, Inc. v. City of Concord,* 122 N.H. 910, 451 A.2d 1315, 1317 (1982), saying: "The location and characteristics of the property involved create greater security requirements ... than ... other property in the area because the parcel ... is less central ... less populated and ... less serviced by law enforcement patrols. This hardship arises from the uniqueness of the building and the land itself." In *Atwood v. City of Portland,* 55 Or.App. 215, 637 P.2d 1302 (1981), *cert. denied,* 292 Or. 722, 644 P.2d 1131 (1982), application for a variance was granted and affirmed on appeal in part because the site was a steep and rocky slope, the former site of a landfill. *See also Higgins v. Township of Radnor,* 13 Pa.Cmwlth. 195, 318 A.2d 761, 763 (1974).

The treatise writers also are in accord with the rule that variances should only be granted when the uniqueness or peculiarity of a subject property is not shared by neighboring property and where the uniqueness of that property results in an extraordinary impact upon it by the operation of the statute, thus creating undue difficulty (or unnecessary hardship in respect to use variances).

It is *fundamental* that the difficulties or hardships must be unique to justify a variance; they must be peculiar to the application of zoning restrictions *to particular property* and not general in character.... [I]t is not uniqueness of the plight of the owner, but uniqueness of the land causing the plight, which is the criterion. If the hardship is common to the whole neighborhood, it may be ground for an exception or special use permit [if the statute so provides].... [T]he hardship [in order to justify a variance, however,] ... must relate to the particular property of the applicant....

McQuillin, *supra* § 25.167 (emphasis added, footnotes omitted).

[I]t is held that a variance may be granted only for hardship which relates specifically to the applicant's land. Thus, a landowner was not entitled to a variance to relieve his land from a restriction which applied equally to all lots of similar size.

Anderson, *supra* § 14.55 (1968).

It follows that the unnecessary hardship ... must relate to the land, not to the applicant-owner. Hardship which is merely personal to the current owner of real property will not justify the granting of a variance....

In each case [where the variance was denied], the hardship results from an error on the part of the landowner, not from an unduly severe impact of the regulations upon the land in question....

. . . .

Reviewing a wide variety of variance applications based upon reasons personal to the applicant, the courts have consistently held that such personal difficulties do not constitute unnecessary hardship.

Anderson, *supra* § 18.30 (2d ed.) (footnotes omitted).

The most important part of [the] law of variances depends upon a distinction between two kinds of hardship. In one type of case, hardship in developing a given lot ... arises from circumstances peculiar to that lot ...; and in that case the appropriate remedy is ... a variance.... In the other types of cases, the hardship ... may arise because of conditions which are general in the neighborhood; ... it is often held that the appropriate remedy is a change in the zoning.... [T]he courts have usually (but not always) held that variances are inappropriate in that situation.

Williams, *supra* § 142.

The great strengthening of the criteria for granting variances, ... has thus been particularly evident in the number of cases emphasizing the requirement that hardship must arise from circumstances unique to the particular lot in question.... Moreover, the courts have again emphasized that a variance granted to take care of some hardship

personal to the applicant is not a unique hardship resulting from circumstances peculiar to the piece of land.

*Id.* § 142.06. *See also* Rathkopf, *supra* § 38.04; Yokley, *supra* § 21–6. ("The burden of proof is on the applicant to establish that his land is uniquely affected resulting in unnecessary hardship.").

Yokley quotes from *Taxpayers Association v. Board of Zoning Appeals*, 301 N.Y. 215, 93 N.E.2d 645, 647 (1950):

[T]he record does not show that the property suffers a unique or singular disadvantage, not common to other property in the district, through the operation of the zoning ordinance. Here, the hardship, if any, is general and characteristic of the entire area, and the remedy lies in a revision of the zoning ordinance through legislative action, not by the granting of a variance to a single property owner.

Yokley, *supra* § 21–6.

■ We conclude that the law in Maryland and in Baltimore County under its charter and ordinance remains as it has always been—a property's peculiar characteristic or unusual circumstances relating only and uniquely to that property must exist in conjunction with the ordinance's more severe impact on the specific property because of the property's uniqueness before any consideration will be given to whether practical difficulty or unnecessary hardship exists. Before applying the facts of the instant case to the law and, thus, resolving the case *sub judice*, we must touch upon two other aspects of the process, *i.e.*, the self-inflicted injury and the zoning authorities' acquiescence in issuing a building permit based on plans that left unclear the elevation of the structure and the subsequent inspection.

### Self–Inflicted Hardship

■ We have before referred to *Marino v. Mayor and City Council of Baltimore*, 215 Md. 206, 137 A.2d 198. There, the Court said, "it was incumbent [on the applicant] to [show] . . . that the hardship was not the result of the applicants' own actions." *Id.* at 218, 137 A.2d 198. The Court of Appeals

noted in *AD + Soil, Inc. v. County Comm'rs,* 307 Md. at 340, 513 A.2d 893:

> The essence of AD + Soil's argument ... is that the setback requirements ... would cause ... unwarranted hardship because it had obtained its first state permit and constructed its transfer station before it learned of these local requirements.... The Board declined to grant the variances, concluding that Ad + Soil's "hardship" was self-inflicted ... and therefore not the kind of hardship cognizable under the Zoning Ordinance.

The Court affirmed the Board. Foreign jurisdictions are generally in accord. *See Pollard v. Zoning Bd. of Appeals,* 186 Conn. 32, 438 A.2d 1186, 1190 (1982) (" '[S]elf-inflicted or self-created hardship ... is never considered proper grounds for a variance.' ... '[W]here the applicant ... creates a nonconformity, the board lacks power to grant a variance.' ") (citations omitted); *Volkman v. City of Kirkwood,* 624 S.W.2d 58 (Mo.App.1981); *Matter of Schrader,* 660 P.2d 135 (Okl. 1983); *Ex Parte La Quinta Motor Inns, Inc. v. Greenville County Bd. of Zoning Appeals,* 279 S.C. 598, 310 S.E.2d 438 (App.1983); *McClurkan v. Board of Zoning Appeals,* 565 S.W.2d 495 (Tenn.1977); *Steele v. Fluvanna County Bd. of Zoning Appeals,* 246 Va. 502, 436 S.E.2d 453, 456 (1993) ("[T]he hardship, if any, was self-inflicted. The placement of the improvements ... was within the control of the Garretts and their contractor, Raintree."). *See also Shafer, supra; VanLandschoot, supra; Walkingstick, supra; Xanthos, supra; St. Clair, supra.* Were we to hold that self-inflicted hardships in and of themselves justified variances, we would, effectively not only generate a plethora of such hardships but we would also emasculate zoning ordinances. Zoning would become meaningless. We hold that practical difficulty or unnecessary hardship for zoning variance purposes cannot generally be self-inflicted.

### The Granting of the Permit

In *Francis v. MacGill,* 196 Md. 77, 75 A.2d 91 (1950), a property owner sought equitable injunctive relief. The facts

were that while the enactment of a zoning ordinance was pending, the property owner obtained a building permit to construct that which would not be permitted after the enactment of the ordinance. After the ordinance was enacted, the owner constructed, pursuant to the permit, a building that had become prohibited by reason of the passage of the ordinance. The Court noted:

"Adoption of zoning ordinance *ipso facto* revokes permit for construction ... where no construction has begun."

... They completely ignored the Zoning Regulations, and they were engaged in an unlawful act.

196 Md. at 85, 75 A.2d 91 (citation omitted). The Court affirmed the revocation of the building permit.

The Court noted, pursuant to a timely appeal, in *Mayor and City Council of Baltimore v. Shapiro*, 187 Md. 623, 634, 51 A.2d 273 (1947), *overruled on other grounds in Nutter v. Non–Profit Housing Co.*, 230 Md. 6, 185 A.2d 360 (1962), where the ordinance was changed prior to commencement of construction under a permit, and where the change made that use, which was previously permitted, prohibited, that the "mere issuance of a permit ... does not create a vested right, or estop [9] the municipal authorities from revoking it." In a case for the issuance of a mandatory injunction that involved an attempt to obtain a permit for what was alleged would be a nonconforming use the court opined in *Board of County Comm'rs v. Snyder*, 186 Md. 342, 347, 46 A.2d 689 (1946): "No permit was issued, and if it had been, it would have conferred no vested right, nor would it have created an estoppel."

In the mandamus case of *County Comm'rs v. Ward*, 186 Md. 330, 340, 46 A.2d 684 (1946), the Court held:

The Board ..., as an administrative body, was bound to follow the regulations it adopted, in the exercise of ...

---

**9.** The applicability of the "doctrine of zoning estoppel" has still not been accepted (or rejected) by the Court of Appeals in spite of the opportunity presenting itself to that Court as recently as our case of *Offen v. County Council*, 96 Md.App. 526, 625 A.2d 424 (1993), *rev'd in part*, 334 Md. 499, 639 A.2d 1070 (1994).

delegated legislative power. The fact that it might have rezoned ... does not alter its obligation to adhere to existing regulations....

In the case of *Lipsitz v. Parr*, 164 Md. 222, 164 A. 743 (1933), a case seeking injunctive relief by way of a restraining order, a city officer mistakenly issued a building permit for an ice factory when the statute prohibited ice factories. The Court there held:

A municipality may be estopped by the act of its officers if done within the scope and in the course of their authority or employment, but estoppel does not arise should the act be in violation of law.... [T]he ordinance forbade the officials ... to grant the permit which the plaintiff asked and obtained....

... [I]t was therefore unlawful for the officers ... to grant the permit, and it would be unlawful for the licensee to do what the purporting permit apparently sanctioned. A permit thus issued ... does not ... prevent the permit from being unlawful nor from being denounced by the municipality because of its illegality.... *Every one dealing with the officers and agents of a municipality is charged with knowledge of the nature of their duties and the extent of their powers, and therefore such a person cannot be considered to have been deceived or misled* by their acts when done without legal authority.

So, even where a municipality has the power, but has done nothing, to ratify or sanction the unauthorized act ... it is not estopped by the unauthorized or wrongful act of its officer ... in issuing a permit that is forbidden by the explicit terms of an ordinance.... *Valentine v. Rds. Directors*, 146 Md. 199, 206 [126 A. 147] [ (1924) ].... [Citations omitted, emphasis added.]

164 Md. at 227–28, 164 A. 743.

The Court cited *Lipsitz* in *Inlet Associates v. Assateague House Condominium Assoc.*, 313 Md. 413, 545 A.2d 1296 (1988), a case seeking specific performance and injunctive relief, and also cited *City of Hagerstown v. Long Meadow*

*Shopping Center,* 264 Md. 481, 287 A.2d 242 (1972), a case of a timely appeal of the denial of a building permit. In *Inlet Associates,* the Court opined that "[c]onsequently, '[e]veryone dealing with officers and agents of a municipality is charged with knowledge of the nature of their duties and the extent of their powers, and therefore such a person cannot be considered to have been deceived or misled by their acts when done without legal authority.'" 313 Md. at 437, 545 A.2d 1296. The Court added: "[T]he doctrine of equitable estoppel 'cannot be ... invoked to defeat the ... enforcement of ... ordinances, because of an error or mistake committed by one of its officers ... which has been relied on by the third party to his detriment.'" *Id.*

■ Accordingly, it appears clear that the mistake of a county official cannot be the "practical difficulty" unique to the subject property required in order to authorize the grant of the variance sought and obtained by Ward.

The authorities elsewhere are in accord.

> The master also erred in finding that unnecessary hardship resulted from the plaintiffs' reliance upon representations by the selectmen. This finding disregards the principal that hardship relates to the special character of the *land,* not to the circumstances of the *owner.*

*Richardson,* 455 A.2d at 1062.

> [R]elator argues the Board should be estopped from denying the height variance because a city building inspector visited the premises several times and observed the construction taking place but made no complaint....
>
> In any case there is no authority on the part of a building inspector to grant a variance....

*Katz v. Board of Zoning Adjustments,* 232 So.2d 546, 548 (La.App. 4th Cir.1970). *See also Klanke v. Zoning Bd. of Adjustment,* 83 Pa.Cmwlth. 441, 477 A.2d 907, 909 (1984), and *Walkingstick, supra; Xanthos, supra; and St. Clair, supra.*

### Resolution

We resolve here only the issue of the granting of the variance sought and applied for by Ward.

■ There was no evidence submitted to the Board that the subject site was in any way peculiar, unusual, or unique when compared to other properties in the neighborhood such that the ordinance's height restriction's impact upon the subject property would be different than the restriction's impact upon neighboring properties. In essence, the impact would be the same. The first step of the variance process was thus not met. Had there been evidence before the Board indicating that the subject property was peculiar or unusual and, thus, disproportionately affected by the height restriction, then we might have been able to conclude that the Board was correct. There was, however, no such evidence presented. Therefore, the Board's granting of the variance was arbitrary and illegal.

It is not the purpose of variance procedures to effect a legalization of a property owner's intentional or unintentional violations of zoning requirements. When administrative entities such as zoning authorities take it upon themselves to ignore the provisions of the statutes enacted by the legislative branch of government, they substitute their policies for those of the policymakers. That is improper. We shall reverse.

**JUDGMENT REVERSED; COSTS TO BE PAID BY APPELLEE.**